Marian McDermott, Appellee, v. McKeown Transportation Company, Appellant.

## Gen. No. 35,164.

Opinion filed November 9, 1931. Rehearing denied November 23, 1931.

JOHN A. BLOOMINGSTON, for appellant.

JAMES L. BYNUM, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against defendant to recover damages for personal injuries claimed to have been sustained by her on account of the defendant's negligence in failing to have a rear light on one of its trucks, as a result of which an automobile in which plaintiff was riding crashed into the rear end of the truck, injuring plaintiff. There was a jury trial and a verdict and judgment in plaintiff's favor for $5,750, and the defendant appeals.

The record discloses that plaintiff, a woman about 20 years of age, and two young men, were riding in a Ford automobile driven by one of the men from plaintiff's home in Wilmette to a party to be held in Evans-

ton. They were proceeding south at about 18 or 20 miles an hour in Railroad avenue, a north and south street, when the front end of the Ford struck the rear end of defendant's truck, which was also being driven south in Railroad avenue, and plaintiff was severely injured. The accident occurred about nine o'clock p. m., May 13, 1926. The Northwestern railroad tracks run along the east side of Railroad avenue, the tracks being on an elevated embankment about 25 feet high. Along the west side was a row of trees with heavy foliage. The night was dark, misty and foggy; there was one windshield wiper in front of the driver which was being operated on account of the fog and mist. Plaintiff sat in the middle of the front seat of the Ford car between the two men and she testified that just before the accident the automobile was traveling about 15 miles an hour as they went south in Railroad avenue; that the "night was misty, rainy, foggy, and the fog got heavier as we got towards Evanston"; that the "windshield was so full of water and all splashed up, that you could hardly see, with the rain and moisture in the air. I couldn't see even through the windshield"; that from the time they left her home until the accident she didn't say anything to the driver or the other boy with reference to how the car was being driven; that she didn't know a truck or anything was in front of them until the collision.

Lloyd Schreck, the young man who was driving the Ford, testified that he was going from 18 to 20 miles an hour; that Railroad avenue was "decidedly foggy; you could hardly see at all. . . . As I drove along Railroad avenue you couldn't hardly see anything it was so dense in there, just like a tunnel, you might say, going all along there, on account of the embankment on the east side and the trees on the west side"; that he had his headlights on and that he could see only about eight or ten feet ahead; that there were some arc lights

in the street but they gave practically no light "on account of the fog. It didn't penetrate at all"; that when he first saw the truck it was five or six feet ahead of him; that he didn't see any rear light on the truck; that as soon as he saw the truck he endeavored to stop but was unable to do so.

There is other evidence as to the condition of the weather at the time in question to the same effect. The evidence further shows that the truck in question was in charge of two men, a driver and his helper; they had been delivering merchandise, the last delivery having been made in Wilmette about five or ten minutes before the accident and that the speed of the truck at the time in question was about ten miles an hour. The evidence further shows that a kerosene lamp was attached underneath the rear end of the truck which was struck and damaged by the impact with the Ford. There is further evidence to the effect that the lamp was a comparatively new one in good condition and that it was lit when it began to get dark about two hours before the accident. The helper testified that when he made the last delivery in Wilmette about five minutes before the accident, the lamp was lit, and threw a red light to the rear and a white light to one side.

The case was tried on the theory that there was an absolute legal duty on defendant to maintain a red light on the rear of the truck, as required by the statute, Cahill's St. ch. 95a, ¶ 17, if defendant would relieve itself from liability in case one were injured on account of there being no red light, and this is the contention of plaintiff. An instruction was given in the language of the statute, that "When upon any public highway in this State, during the period from one hour after sunset to sunrise, . . . each motor vehicle or trailor shall also exhibit at least one lighted lamp which shall be so situated as to throw a red light visible in the reverse direction." But we think the law is not

so unreasonable that there might not be circumstances which would relieve one from liability in case the rear light suddenly went out. *Toledo, Wabash & Western Ry. Co. v. Beggs,* 85 Ill. 80; *People v. Kastings,* 307 Ill. '92; *Berkovitz v. American River Gravel Co.,* 191 Cal. 195; *Yates v. Brazelton* (Cal. App.), 291 Pac. 695.

In the *Beggs* case a judgment in a personal injury case was reversed and it was held that the breaking of a wheel on a coach of a railroad train which had been made by skillful manufacturers and had been thoroughly tested, would not render the railroad liable for negligence. The court said (p. 83): "The defect in the car wheel was not discoverable by the usual and proper tests, and, on the authority of *Illinois Central Railroad Co. v. Phillips,* 49 Ill. 234, we must hold the company, under the proof in this record, not liable. That the car wheel broke when in operation, raising the presumption of negligence in the corporation, is admitted, but that presumption is overcome by showing the wheel was the work of one of the most skillful manufacturers in the United States; that it was of the kind usually employed in the service, and had been subjected to and withstood the usual tests."

In the *Kastings* case it was charged that the defendant unlawfully operated a taxicab without having complied with certain sections of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 44 *et seq.* He was fined $100 and costs. On appeal the judgment was reversed. The court said (p. 106): "It will be noticed also that the taxicab owner who gives a bond as surety is by the act not only made liable in damages for injury to persons and property by negligent operation of his machine, but is also held liable for such damages as occur by reason of the defective construction of his taxicab. . . . The clause making the taxicab owner liable for injury by reason of the defective condition of his taxicab virtually makes him an insurer in that particular." The court then referred to the *Beggs* case, *supra,* and

other authorities, and continuing said (p. 107): "In *Daugherty v. Thomas,* 45 L. R. A. (N. S.) 699, it is laid down by the Supreme Court of Michigan as a general proposition that absolute liability, without fault on his part, cannot ordinarily be imposed upon a citizen, because it deprives him of property without due process of law."

In the *Berkovitz* case, *supra,* plaintiff recovered damages for personal injuries on account of the claimed negligence of the defendant in driving a motor truck on a public highway at night without "a tail light or any light whatsoever on the rear of said truck." In that case, at about two o'clock in the morning, plaintiff and other persons were traveling in a Dodge touring car on a public street in Sacramento, when the car crashed into the rear of an automobile truck traveling in the same direction. The automobile was damaged beyond repair, one of the men riding in it was killed and the plaintiff severely injured. The evidence was sharply conflicting as to whether the tail light on the truck was burning at the time of the accident. It was a coal-oil lamp, the type used for such lights. Some witnesses testified that they passed the truck shortly before the accident and the rear light was not burning. The driver of the truck testified that shortly before the accident he got off the truck and saw that the tail light was burning. The court instructed the jury that the statute of the State required a red light on the rear of trucks, and that if the jury believed the lamp was not lit at the time of the accident, defendant was guilty of negligence. The court said that this was a correct statement of the law in most cases where the violation of a statute was charged, and continuing said (p. 198): "By the exercise of ordinary care, the driver of a motor vehicle at night would always know whether the headlights were burning and in such a case instruction No. 5 would be strictly accurate. The tail light, how-

ever, is not in the immediate view of the driver, whose attention is ordinarily directed ahead, and it cannot be the intention of the law that a watchman must be maintained over the rear light to observe whether it is constantly burning. It is well known that with the best of care coal-oil lights, as well as electric lights, sometimes go out. If one drives a motor vehicle in the nighttime when he knows, or in the exercise of ordinary care ought to know, that the tail light is not burning, he is guilty of negligence. While ignorance of the law is no excuse, ignorance of the fact, where ordinary care has been exercised, is a sufficient excuse. Violation of an ordinance 'is presumptively an act of negligence and conclusively so until rebutted by evidence that it was justifiable or excusable under the circumstances.' "

In the instant case we think the theory of the defendant must be sustained. It would not be liable even if the rear light was not lit at the time of the accident, if the jury believed from the evidence that such failure was occasioned without negligence on defendant's part.

We are also of the opinion that the finding of the jury in favor of the plaintiff, to the effect that plaintiff was guilty of no negligence, is against the manifest weight of the evidence. The undisputed evidence is that it was dark, misty and foggy and that this condition was obvious to plaintiff, yet she never did or said anything to the driver of the automobile in which she was riding as to the speed at which the automobile was being driven—no remonstrance or objection of any kind; and we think that under the law of this State, if plaintiff would free herself from negligence, she should have done something or complained to the driver that he was driving too fast under the circumstances, because, under the law, she could not recover unless she were in the exercise of due care. *Pienta v. Chicago City Ry. Co.*, 284 Ill. 246; *Opp v. Pryor*, 294 Ill. 538.

In the *Pienta* case the plaintiff was injured as the result of a collision between a street car and a wagon in which he was riding on a public street in Chicago, and it was held that the negligence of the driver of the wagon was not imputable to plaintiff, who was on the wagon assisting in making deliveries; but it was also held that it was the duty of the plaintiff, where he had an opportunity to learn of danger and to avoid it, to warn the driver of the vehicle; that "The passenger has no right, because someone else is driving the vehicle, to omit reasonable and prudent effort on his part to avoid the danger." And it was held error for the court to refuse to give an instruction by which it was sought to tell the jury that it was the duty of the plaintiff to *warn* the driver of the wagon of the danger as soon as it was apparent to plaintiff.

In the *Opp* case it was held that one who was riding in an automobile as a guest of the driver is not relieved of the duty to exercise ordinary care where the guest has equal opportunity with the driver to observe the danger. In that case plaintiff was riding in an automobile as a guest of the driver in Lafayette, Indiana, and as they were crossing the railroad track a freight train, backing out with little or no lights, struck the automobile, injuring plaintiff. The evidence showed that the plaintiff was in as good, if not better, position than the driver to have seen the train, and that she did not do anything in connection with the driving at all. The court held that before plaintiff could recover she must show that she was in the exercise of ordinary care for her own safety, and that it was her duty, under the circumstances, to observe the danger and, if practicable, warn the driver. The judgment in her favor was reversed because of faulty instructions on this point.

In the instant case it is obvious to anyone that it was extremely dangerous to drive the Ford automobile at 18 or 20 miles an hour through such mist and fog. Automobile lights will not penetrate in such a situa-

tion, and the testimony of the driver here is that he could not see more than 8 or 10 feet ahead of the Ford. And while the negligence of the driver is not imputable to the plaintiff, yet, before she can recover she must show that she was in the exercise of due care for her own safety.

For the reasons stated the judgment of the superior court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

McSurely and Matchett, JJ., concur.