[No. 26368. Department One. December 18, 1936.]

RAY KELLY et al., *Appellants*, v. ARTHUR BANK, *Respondent*, FRANCIS TIERNEY, *Defendant*. [1]

*Eggerman & Rosling* and *Herald A. O'Neill,* for appellants.

*Bogle, Bogle & Gates, Ray Dumett,* and *Warren Brown, Jr.,* for respondent.

STEINERT, J.—This is an action to determine the amount of the respective interests held by certain parties in a copartnership or joint venture. Plaintiffs sought an adjudication of partible ownership upon a basis of percentages as set forth in their complaint. Defendant Arthur Bank denied the material allega-

[1]Reported in 62 P. (2d) 1359.

tions of the complaint and, by way of cross-complaint, sought adjudication on a different basis, as claimed by him, and, in addition, sought restitution of excess dividends alleged to have been paid to the other partners. Defendant Francis Tierney appeared by way of answer to the cross-complaint, but merely asked that he be dismissed from the action.

By stipulation of the parties at the time of the trial, the only question presented to the court for determination was the relative percentage of shares to which the partners were respectively entitled. Upon trial to the court, without a jury, findings and conclusions were made and entered supporting the contentions of defendant Bank. From a judgment thereon, the plaintiffs have appealed.

Appellants' contention is that the division of the share interests should have been adjudicated on a basis of fifty-two per cent to Nelson and sixteen per cent to each of the other partners. Respondent's contention is, and the court found, that the division should be adjudicated on the basis of fifty-two per cent to Nelson, twenty-four per cent to Bank, twelve per cent to Kelly, and twelve per cent to Tierney. It will thus be observed that there is no dispute as to Nelson's fifty-two per cent, but only as to the proper division of the remaining forty-eight per cent. In passing, it may also be stated that, prior to the commencement of this action, Tierney sold his interest in the partnership to Kelly, but it was understood between them, at the time, that there was an existing dispute as to whether Tierney's interest was twelve or sixteen per cent.

Appellants make two assignments of error: (1) That the terms of the partnership agreement conclusively implied equality in the division of forty-eight per cent among Bank, Kelly, and Tierney, that is to say, sixteen per cent to each; and (2) that the judg-

ment is contrary to the evidence. These assignments will be considered in their inverse order.

The facts, growing out of a multitude of details, will be stated only in a general way.

In the latter part of September or the early part of October, 1932, respondent Bank learned, through the newspapers, that the city of Seattle intended to call for bids upon a contract for the collection and disposal of garbage. Although Bank had not had any experience along that line, he was interested in its possibilities and began to investigate the matter. Being unable to finance the venture by himself, he endeavored to interest the appellant Nelson, who had been engaged in the general contracting business for many years and was a man of means. Nelson, however, indicated to Bank that he would not be interested in the proposition, but gave as references certain other individuals who, he thought, might consider it.

Sometime later, Bank, on his own initiative, wrote to Tierney, who resided in Butte, Montana, and endeavored to interest him in the matter. Tierney came to Seattle and, on a second trip, brought Kelly with him. Tierney and Kelly had previously been associated together in garbage collection work in Montana, but neither of them had known Nelson.

After making some further investigation and estimates, continuing over a period of several weeks, Bank, Kelly, and Tierney orally agreed to associate themselves together with the view of securing the contemplated contract and proceeding with the venture. For the purposes of the enterprise, Bank agreed to contribute ten thousand dollars, and Kelly and Tierney each agreed to put in five thousand dollars, or a total of twenty thousand dollars. In return, Bank was to have a fifty per cent interest in the profits of the partnership, and Kelly and Tierney each a twenty-five per cent

interest, according to their proportional contributions.

The total sum thus subscribed by Bank, Kelly, and Tierney, however, was not enough to finance the proposition, which required a considerable outlay of money for equipment and also the posting of a very heavy bond. The three men, therefore, further agreed among themselves that an additional partner should be obtained, if possible, who they hoped would come in on the basis of a one-third interest, which would mean that the remaining two-thirds would then be divided among the three original partners in proportion to their contributions.

Nelson was the most likely prospect at the time, and was therefore contacted by the other three parties. A number of conferences were held among the four, and Nelson then began to manifest some interest in the proposed venture, but not enough to indicate to a certainty that he would join the others. He would not definitely commit himself on the subject, particularly with reference to a one-third interest. It appears that it was his idea that if he went into the venture at all, he would do so only on the basis of his having control, although he did not, at first, impose or make known that condition.

The city's program required all prospective bidders to file their bids by ten a. m. of November 30, 1932. Time, therefore, became an important factor, as will presently appear.

A day or two prior to November 29, 1932, Bank, Kelly, and Tierney, through their attorney, drew up for themselves formal articles of copartnership, which provided that such partnership should commence on the day that the city awarded to it a contract for the collection and disposal of its garbage. The articles further recited that the three parties to the agreement contemplated taking in another partner, but that it was

then impossible to determine what the extent of such additional partner's interest would be. For that reason, it was stipulated in the agreement that, after the fourth partner had been procured and his share interest determined, the profits from the remaining share interests should be divided among the other three on the basis of one-half to Bank, one-fourth to Kelly, and one-fourth to Tierney.

Bank and Kelly having already paid in ten thousand dollars and five thousand dollars respectively, and Tierney having agreed to pay in his contribution of five thousand dollars within thirty days, it was provided that Tierney should not receive any dividend profits until his share had been fully paid for. Tierney actually paid in only $1,846.

It was further stipulated in the agreement that, if the contract with the city was not obtained, the partnership should be at an end and all amounts paid in by the three contributors should be returned to them respectively.

The articles of copartnership were signed by Bank, Kelly, and Tierney, under date of November 29, 1932, but the exact hour of their execution is in dispute.

Inasmuch as all bids had to be in by ten a. m. of November 30th, it was necessary that the fourth member of the partnership, with substantial financial backing, should come in immediately, else there was no hope of placing a successful bid. Nelson was still the only available prospect. Accordingly, a meeting of the four men was arranged for and held at the Arctic Club in Seattle at about two o'clock in the afternoon of November 29th. After some discussion, Nelson agreed to go into the venture, but only upon condition that he was to receive a fifty-two per cent interest in the partnership. This would leave only forty-eight per cent to be divided among the other three. Although very

much disappointed at Nelson's demand for control, the others had no alternative and, accordingly, acceded to the terms thus imposed. Up to this point, there is very little material dispute as to the facts.

We now come to a matter which furnishes the basis of this lawsuit and concerning which there is violent dispute. The appellants contend that, in the conference at the Arctic Club, Nelson demanded, as a second condition of his entry into the partnership, that the forty-eight per cent interest, over and above his fifty-two per cent interest, should be divided equally among Bank, Kelly, and Tierney, that is to say, sixteen per cent to each. Respondent contends, on the contrary, that nothing whatever was said, and that no agreement was made, at that, or at any, conference with Nelson as to the division of the forty-eight per cent, but only that Nelson was to have fifty-two per cent and the others, together, forty-eight per cent.

At about four o'clock p. m. of November 29th, the four parties again met, this time at the office of a surety company which was to write the bond if the contract should be obtained. After some discussion, the president of the surety company, upon request, drew up a memorandum agreement, which was signed by the four interested parties. That agreement, after reciting at length that the four parties had agreed to post a bond with the city, that Bank, Kelly, and Tierney had deposited with the surety company twelve thousand, five hundred dollars to be applied on the purchase price of trucking equipment, and that Nelson had agreed to guarantee the balance of the purchase price of the equipment and to indemnify the surety company for all liability on the bond, concluded by stating that all profits to be derived from the performance of the garbage removal contract were to

"... be divided among them in the proportion of 48% of said profits to the said Arthur Bank, Ray Kelly and Francis Tierney and in the proportion of 52% to the said George Nelson;"

but nothing was said therein as to whether the forty-eight per cent was to be allocated equally or otherwise. The conference at which that agreement was executed lasted about an hour, after which Nelson departed. What occurred after his departure is in dispute.

We have already referred to the oral understanding which Bank, Kelly, and Tierney had with each other prior to their conference with Nelson at the Arctic Club, and prior to the formal written agreement executed among themselves exclusively some time on November 29th. Respondent's evidence was to the effect that the three-party written agreement was signed by Bank, Kelly, and Tierney shortly after the execution of their agreement with Nelson, and just after Nelson had left the conference which took place in the office of the surety company. Appellants' evidence, on the contrary, was to the effect that the tri-partite agreement was signed prior to the conference at the Arctic Club; and their further contention is that the prior agreement was specifically abrogated by the execution of the later agreement with Nelson and also by a verbal agreement had by Bank, Kelly, and Tierney while they were on their way from the Arctic Club conference to the office of the surety company; this contention is, in turn, emphatically denied by respondent. It is conceded, or at least the evidence shows, that Nelson knew nothing of the agreement which the other three had among themselves until several months afterwards, although it also appears from the evidence that Nelson knew that Bank was contributing as much to the venture as Kelly and Tierney together.

Pursuant to the agreement entered into by the four

parties, a bid was submitted to the city. It proved to be the successful bid, and the contract was let to the partnership, then consisting of the four individuals. The contract has been very remunerative, and extensive dividends have been declared from time to time. Unfortunately, however, friction soon developed between Bank and the other three partners. It is unnecessary to go into detail in that respect, further than to say that, sometime after the enterprise had gotten under way, Bank was ousted from all active participation in its affairs. Later, also, Tierney had some difficulty with Kelly and Nelson, but with that we are not here concerned, because, as already stated, Tierney subsequently sold his interest to Kelly at what now appears to have been a very substantial profit.

Soon after operations under the contract had begun, the matter of Bank's share interest and profits came to the front. It will be remembered that, according to his agreement with Kelly and Tierney, he was entitled to one-half of forty-eight per cent of the profits, or twenty-four per cent of the total, while appellants' contention is that, because of the subsequent transactions, Bank became entitled to only one-third of the forty-eight per cent of the profits, or sixteen per cent of the total.

Although we have made a rather extended statement of the case, we have by no means covered all the details disclosed by the evidence. The trial lasted four days, and the statement of facts consists of 582 pages. Most of the evidence came from interested witnesses, but some of it consists of disinterested testimony. All of the evidence, however, taken together, covers a field of violent conflict and glaring inconsistencies. The stories of the various witnesses are either flatly contradictory of each other or else so widely divergent as to afford no common ground of understanding. The

trial judge, in a lengthy memorandum decision, analyzed the testimony of the various witnesses and gave his reasons for accepting the statements of some and rejecting, or else minimizing, those of others.

As to some of the facts, the court frankly stated that it was impossible to say where the preponderance of the evidence lay. But as to the crucial question, the court found that appellants had not shown, by a preponderance of the evidence, that Nelson had, at the time that he entered into the agreement with Bank, Kelly, and Tierney, made it a condition of his entry into the partnership that the remaining forty-eight per cent interest therein was to be divided among Bank, Kelly, and Tierney in equal parts; on the contrary, the court found that Bank had at all times had a twenty-four per cent interest in the partnership, or one-half of the forty-eight per cent.

It is the well settled rule that the findings of the trial court on conflicting evidence will not be disturbed unless the evidence clearly preponderates · against them. *King v. Brehme,* 174 Wash. 61, 24 P. (2d) 453; *Puget Sound National Bank v. Olsen,* 174 Wash. 200, 24 P. (2d) 613; *Grimes v. Fraser,* 178 Wash. 511, 35 P. (2d) 88; *Collins v. Larson,* 180 Wash. 171, 38 P. (2d) 1057. The evidence in this case is in utter conflict. · There was substantial evidence in support of the findings made by the court, and a careful scrutiny of the entire record fails to convince us that the preponderance of the evidence is against the findings. We must, therefore, accept the findings of the court as verities. This disposes of the questions of fact.

Appellants' other assignment of error presents, according to their contention, a question of law. They assert that the agreement made in writing by the four partners, when construed according to its legal effect, conclusively implied an equality of division of interest

among Bank, Kelly, and Tierney, and that such legal effect, implied by law, could not be contradicted by parol evidence or extrinsic proof.

In discussing this assignment, we must start with the premise, established by the court's findings, that there was no express understanding or agreement among the parties that there was to be an *equal* division among Bank, Kelly, and Tierney of the forty-eight per cent partnership interest. The agreement which they made was committed to writing and was signed by all four of the parties. That agreement merely provided, by its terms, that Nelson should have fifty-two per cent and the other three partners forty-eight per cent. It will thus be observed that Nelson's interest was fixed and certain, but that the respective interests of the other three were uncertain, unless we indulge the implication of equality contended for by appellants. With respect to that agreement, the court specifically found that it was but a

". . . layman's memorandum and did not constitute, and was not understood or intended by said parties to constitute, the full, complete or entire understanding or agreement between them; but was merely intended to specify the percentage of interest so granted to George Nelson."

A careful reading of the agreement leads us to the same view. The agreement is not only incomplete but is also susceptible of explanation and clarification of one of its terms, without varying or modifying its general provisions.

As we view the facts in this case, we conclude, and the trial court must have been likewise convinced, that Nelson was not concerned with the relative division of the forty-eight per cent interest among his three associates. All that he was concerned with was his fifty-two per cent, and that, concededly, is exactly what he got and still has. The mere fact that he did not, at the

time, know of the personal arrangement of the other three partners with respect to the remaining interest, in no way affected, and does not now concern, him. The division among the other three does not, in any way, add to, or detract from, his fifty-two per cent. Were it shown that his interest was in some material way affected by the percentages of interests respectively allotted to the others, a different question might be presented. We, therefore, must view the matter as one affecting only Bank, Kelly, and Tierney.

It is a well recognized principle of the law of partnership that, in the absence of any agreement to the contrary, the law will imply that partners are to share equally in the profits and losses. *Yatsuyanagi v. Shimamura,* 59 Wash. 24, 109 Pac. 282; Storey on Partnership (7th ed.), § 24; 47 C. J. 789; 20 R. C. L. 1023, § 265. But the very statement of the rule implies a correlative, namely, that where there is an express stipulation or controlling evidence, either direct or circumstantial, to the effect that the division is to be made upon a different basis, the presumption of equal division does not apply.

In this case, we have a written agreement, signed by Bank, Kelly, and Tierney, the parties affected, specifically fixing their respective interests. There is also evidence of a substantial nature which supports the conclusion that the agreement made by them correctly reflected their understanding throughout the original negotiations. Whether the agreement made by Bank, Kelly, and Tierney preceded or followed the agreement to which Nelson was a party is, under the facts and circumstances of this case, immaterial. If it followed the agreement with Nelson, his interest being in no way affected, it would be conclusive as to the division of the remaining forty-eight per cent. If it preceded that agreement, it is none the less binding, be-

cause it specifically stated what the division *was to be,* dependent upon how much was to be allotted to the fourth, or prospective, partner.

It does not contradict the agreement with Nelson in any way, is not out of harmony with any part of it, and merely explains one of its terms. As the trial court stated, if Bank, Kelly, and Tierney had intended, at the time that they completed their agreement with Nelson, to abrogate their agreement with each other, it would have been an easy thing for them to destroy the former agreement or else amend it, either by an addition thereto or by a separate instrument. They had taken the pains to have an attorney draw the former agreement for them. The same attorney was readily available to make any intended change. We conclude that the agreement was not abrogated, either expressly or impliedly.

The judgment is affirmed.

MILLARD, C. J., MAIN, BLAKE, and GERAGHTY, JJ., concur.