[No. 26629. *En Banc.* November 29, 1937.]

CLARA B. BROTHERTON *et al., Respondents,* v. DAY & NIGHT FUEL COMPANY *et al., Appellants.*[1]

[1]Reported in 73 P. (2d) 788.

*Ralph S. Pierce, Edwin J. Cummins,* and *Gordon H. Sweany,* for appellants.

*John J. Sullivan* and *Hugh Miracle,* for respondents.

BEALS, J.—Plaintiff Clara B. Brotherton, as guardian *ad litem,* sued to recover damages for personal injuries suffered by Edwin Brotherton, a minor, and William Walsh sued for damages to his automobile, the injuries to both person and property having been occasioned by a collision between the car owned by plaintiff Walsh, which was then being driven by his brother Grattan Walsh, in which Edwin Brotherton (who will hereinafter be referred to as though he were the actual plaintiff) was a passenger, and a large truck, constructed for hauling sawdust, owned and operated

by defendant Day & Night Fuel Company, a corporation, which, at the time of the accident, was being driven by defendant Russell D. Moye. The action was tried to the court sitting without a jury, and resulted in a judgment in favor of Edwin Brotherton in the sum of one thousand dollars, and in favor of plaintiff Walsh in the sum of ninety-five dollars, from which judgment defendants have appealed.

Error is assigned upon the refusal of the trial court to sustain appellants' challenge to the sufficiency of the evidence; upon the making of several findings of fact; upon the refusal of the trial court to enter judgment in appellants' favor; in entering judgment for respondents; and in overruling appellants' motion for a new trial.

It appears from the record that, on the evening of February 21, 1936, Grattan Walsh borrowed the automobile owned by his brother, respondent William Walsh, and with respondent Brotherton, at about nine o'clock in the evening, left the Walsh home in that portion of the city of Seattle known as West Seattle and proceeded toward the main portion of the city, driving east along west Spokane street. Grattan Walsh was driving, Brotherton sitting beside him on the front seat. It was raining, and the visibility was not particularly good. In that vicinity, west Spokane street is a divided highway, each half being paved and wide enough for two lanes of traffic, the south half of the street being devoted to traffic going east, and the north half to traffic moving west.

At the same time, an orange colored truck owned and operated by appellant corporation was also proceeding east on Spokane street, at the rate of about five miles per hour, up a seven per cent grade, near the intersection of Spokane street with Twenty-third avenue southwest. The truck was heavily loaded, and

was proceeding near its right-hand edge of the pavement. At this point, traffic on Spokane street may move up to thirty-five miles an hour, and respondents were proceeding at the rate of approximately twenty-five miles.

The driver of the automobile did not see the truck ahead of him until his car had approached it quite nearly. He then endeavored to avoid the truck by turning to his left, but, notwithstanding his attempt, the right front door post of the car struck the left rear corner of the truck, damaging the automobile and inflicting injuries upon respondent Brotherton.

The trial court, after stating the formal facts and the collision, found

". . . that the said collision was caused by the negligence of all of the defendants, and that the defendants were negligent in that they [knew, or] should have known, in the exercise of reasonable care, that the truck owned by the defendant Day & Night Fuel Company was not displaying lighted red lights on the rear thereof as required by the laws of the state of Washington; that the defendant failed to use due care in determining whether or not the rear end of the said truck was equipped with lights [and reflectors] as required by the law of the state of Washington." (The words in brackets were stricken by the trial judge, the elisions bearing his initials, as shown by the transcript.)

This finding states the only negligence of which the trial court found appellants were guilty.

■ Respondents suggest that appellant driver was negligent in proceeding up the hill at no greater speed than five miles an hour, and cite § 41 of the traffic code of the city of Seattle, introduced in evidence, which section reads as follows:

"Minimum Speed. It shall be unlawful for any person to drive unnecessarily at such a slow speed as to impede or block the normal and reasonable movement

of traffic except when reduced speed is necessary for safe operation, or because upon a grade, or when a vehicle is a truck or truck and trailer necessarily, or in compliance with law, proceeding at reduced speed."

Respondents, while admitting that appellants' truck comes within the exception referred to in the paragraph quoted, argue that the fact that the truck was proceeding very slowly required the driver thereof to use extreme care to see that the lights on the rear of the truck were functioning.

It is true that the driver of a loaded truck, which of necessity climbs a seven per cent grade slowly, should exercise great care that proper warning signals are in position on the rear of the vehicle to give notice of its presence to overtaking traffic, and that the signals which shine are functioning properly. This, however, is true as to all trucks and all vehicles using the highway. The fact that the truck was moving at approximately five miles per hour does not show any negligence on the part of appellants.

The evidence concerning the warning signals on the rear of the truck is somewhat in conflict. Grattan Walsh testified that it was raining quite hard and the visibility was poor; that his headlights were in good condition (in which, from his own evidence, the witness was evidently in error) and on a clear night would have disclosed to his vision an object sixty feet ahead, but that, on the night of the accident, because of the rain, he could not see nearly as far ahead as under normal circumstances, and that, for the reason assigned, with the windshield swipe working, he could see ahead only about thirty feet; that his brakes were in good condition; that both his car and the truck were traveling three or four feet from the right-hand curb; that the witness was looking forward on the highway, saw no red light, but suddenly saw the truck looming

up in front of him, whereupon the witness swung hard to his left, but failed to clear the truck. He also stated that he did not see any red reflectors on the rear of the truck, and that, when he examined the truck after the accident, he saw no reflectors, nor did he observe any broken clearance light.

Respondent Brotherton testified that the headlights on the car in which he was riding appeared to be normal and on a clear night would disclose objects up to seventy-five feet ahead; that, on the night of the accident, because of the rain, the headlights would disclose objects about thirty feet ahead; also testifying that he had, since the accident, made tests as to the distance within which objects would be rendered visible by the headlights of the car, and that his testimony was in part based upon such tests. The witness testified that he did not see the truck at all before the impact, although he was looking ahead; that the first thing he knew "was when we hit the back of the truck." In view of his testimony that he never saw the truck at all, the testimony of the witness that he was observing the road ahead is entitled to little weight.

John Bianchi, who worked with Grattan Walsh, testified that he came along in his car almost immediately after the accident; that he saw no clearance light on the lower left-hand corner of the truck, and that he did not remember seeing reflectors; that "there was no tail-light on the truck that I know of."

George Church testified that he was with the witness Bianchi, saw the truck, and that there was no light at all on the back thereof. Later the witness testified that there were "no lights visible," which suggests that he referred to the shining of the red signal lamps, not to their mere presence on the truck. The witness could not tell the color of the truck, did not know

whether or not it was loaded, and saw no pitchfork hanging on the rear, other testimony indicating that such an implement was so placed.

This comprises the evidence introduced by respondents as to appellants' negligence.

Appellant Moye testified that there were two red lights on the back of the truck, one tail-light and one clearance light; that there were also on the rear of the truck two red reflectors, facing back, one on the frame by the tail-light and one by the clearance light; that these reflectors were approximately four inches in diameter; that both the rear lights were on the same switch as the headlights, and that the headlights were shining at the time of the accident; that approximately twenty minutes before the accident, the witness had reloaded the truck, and at that time the clearance light was shining; that the clearance light was broken in the accident and one of the reflectors cracked, but that the tail-light continued to function after the accident.

An officer of appellant corporation testified, as did Moye, concerning the lights and reflectors on the rear of the truck, further stating that he saw the particular truck in question at four o'clock on the afternoon of the accident, and that both the tail and clearance lights were then functioning; that the trucks were regularly inspected and the lights checked every afternoon at four o'clock. Another witness testified as to the four o'clock check, and that the lights were in good working order on the day of the accident.

In its oral opinion, rendered at the close of the evidence, the trial court, in summing up the testimony, apparently assumed that the red reflectors were on the rear of the truck in proper position and complying with highway specifications, and it is important to note that the trial court struck from the proposed findings the reference to these reflectors, finding only that ap-

pellants were negligent in that they should have known, in the exercise of reasonable care, that the truck was not displaying rear lights, and in failing to use due care in determining whether or not the rear of the truck was equipped with lights as required by law. The last portion of this finding is against the preponderance of the evidence, as we are of the opinion that the evidence shows beyond question that, at the time of the accident, the rear of the truck carried two red lamps and two red reflectors. There is a dispute as to whether or not the red lights were shining, but as we read the evidence, there is no doubt but that they were in place.

In its oral opinion, the trial court stated that "all the witnesses appear to be telling the truth," which indicates that the trial court saw no reason for disbelieving the testimony introduced by appellants to the effect that the truck carried two rear lights, and that the same had been in good working order only a short time before the accident. Certainly, the record discloses no reason for disbelieving any of this testimony. Of course, the two witnesses who testified that the lights were in good order at four o'clock in the afternoon knew nothing as to their subsequent condition, and appellant Moye naturally could not testify that the lights were actually shining at the time of the collision.

In this case, there is little or no direct conflict in the evidence. While much of the testimony was given by interested parties, we agree with the trial court that it should be assumed that they were truthful in their testimony.

■ While it is true that violation of a statute is, generally speaking, negligence *per se*, it is also true that such violation is not negligence when due to some cause beyond the violator's control, and which rea-

sonable prudence could not have guarded against. *Tomblinson v. Wise,* 163 Wash. 341, 300 Pac. 1056; *Martin v. Bear,* 167 Wash. 327, 9 P. (2d) 365; *Eubanks v. Kielsmeier,* 171 Wash. 484, 18 P. (2d) 48; *Lauber v: Lyon,* 188 Wash. 644, 63 P. (2d) 389.

In the case of *Keller v. Breneman,* 153 Wash. 208, 279 Pac. 588, 67 A. L. R. 92, referring to the stopping of an automobile upon the highway, an act forbidden by statute, this court said:

"It is not meant to be said, of course, that the stalling of an automobile on the highway for every cause is evidence of negligence on the part of its operator. A motor vehicle is a complicated piece of mechanism, and some part of it may give way and cause it to stall, no matter what degree of care the operator may have exercised to keep it in proper condition."

Of course, one who violates a statute or lawful rule of the road must show that he has, in fact, exercised due care, and that he is not, in law, responsible for his infringement of the law.

While engaged in night driving, the tail-light of a motor vehicle is a most important safety appliance, and yet it may cease to function at any time without affording the most careful driver any means of knowing that it has ceased to shine. Assuming that the two electric signals on the rear of appellants' truck were not in working order at the time of the accident, still it appears from the testimony of two witnesses that these signals were functioning at four o'clock in the afternoon, and the driver testified that at least one of the lights was shining only a short time before the collision. The driver testified as to this with particularity, stating that in loading the truck he had occasion to use the clearance light. His testimony in this regard is reasonable, the statement of facts disclosing the following questions and answers:

"Q. What was the occasion for your noticing the clearance light was burning? A. Before that time I had been hauling to our storage plant, and the dump was approximately twenty feet high, and it is a little dangerous to put a truck on it not to back over the edge, and the only way we have of knowing where we are is to put the pitchfork where we are going to dump, and back up until the clearance light reflects on the tines of the fork. Q. And that is the fork on the back end of the truck? A. Yes, sir. Q. And you do that every night? A. Yes, sir. It is the only manner we have of seeing the edge of our pile. Q. And you had done this about how long before the accident? A. About twenty minutes. I had made that trip, and it takes about fifteen minutes to load, and I was going to the New Richmond Hotel."

Appellants' truck was loaded, and there is no reason to doubt Mr. Moye's testimony to the effect that it was loaded just before he left the place of business of appellant corporation, approximately twenty minutes before the collision. The witness stated that he did not have occasion to observe the tail-light while the truck was being loaded, but that he did notice the clearance light, as he had occasion to use it.

In the case of *Berkovitz v. American River Gravel Co.,* 191 Cal. 195, 215 Pac. 675, the supreme court of California, in referring to an instruction by the trial court to the effect that, if at the time of the accident the truck which was run into did not have a red tail-light shining, the defendant was guilty of negligence, said:

" 'Instruction No. 5 is a correct statement of the law in most cases where the violation of a statute is charged. By the exercise of ordinary care, the driver of a motor vehicle at night would always know whether the headlights were burning and in such a case instruction No. 5 would be strictly accurate. The tail light, however, is not in the immediate view of the driver, whose attention is ordinarily directed ahead, and it cannot be

the intention of the law that a watchman must be maintained over the rear light to observe whether it is constantly burning. It is well known that with the best of care coal-oil lights, as well as electric lights, sometimes go out. If one drives a motor vehicle in the night-time when he knows, or in the exercise of ordinary care ought to know, that the tail light is not burning, he is guilty of negligence. While ignorance of the law is no excuse, ignorance of the fact, where ordinary care has been exercised, is a sufficient excuse. Violation of an ordinance "is presumptively an act of negligence and conclusively so until rebutted by evidence that it was justifiable or excusable under the circumstances." ' "

In the case of *Nelson v. Signal Oil & Gas Co.*, 10 Cal. App. (2d) 448, 51 P. (2d) 885, the court said:

"Decedent was one of five men riding in an automobile returning from Los Angeles to Santa Barbara about 2:30 A. M. At a point on the highway approximately three miles south of Carpinteria, the automobile in which decedent was riding collided with the rear end of a trailer owned by defendant Signal Oil & Gas Company and operated by defendant Richardson. Decedent died as a result of the accident. The truck and trailer had left Los Angeles about 8 o'clock the preceding evening, at which time the trailer was equipped with two tail-lights situated on the chassis and a light fastened onto the extreme rear of an overhanging pipe. Repeated inspections were made of these lights by the defendant Richardson and a companion who accompanied him, from the time they left Los Angeles to a point approximately two miles prior to the scene of the accident. On each of these occasions the lights were observed to be burning brightly.

"There was evidence that defendants were negligent in not having at the time of the accident two red lights burning at the extreme end of the load, as required by section 110 (a) of the California Vehicle Act.

"The sole question necessary for us to determine upon this appeal is:

"Did the trial court commit prejudicial error in refusing defendants' requested instruction reading:

" 'You are instructed that even though you find that at the time and place of the accident complained of the rear or tail-lights on·the .truck and trailer of the defendants' had become extinguished, that fact in itself does not necessarily make the operator of said vehicle guilty of negligence. . . .

" 'If in this case you find that the defendants made a reasonable inspection of the rear or tail-lights on said truck and trailer and exercised due care to determine that said tail-lights were in fact burning, then you are instructed that the defendants were not guilty of negligence in this particular even though the rear or tail-lights were out when the collision occurred.'

"The facts in the instant case are analogous with those in *Berkovitz v. American River Gravel Co.*, 191 Cal. 195 [215 Pac. 675], and the question of law is identical. Our Supreme Court held in *Berkovitz v. American River Gravel Co.*, *supra*, that the refusal of the trial court to give a similar instruction was reversible error."

The case of *Yates v. Brazelton*, 108 Cal. App. 533, 291 Pac. 695, is to the same effect. The recent case of *Floyd v. Johnston*, 100 S. W. (2d) (Ark.) 975, is to the same effect, the supreme court of Arkansas using the following language:

"It will be observed that the jury were told in this instruction that if they should find that appellant's failure to provide the tail light was the proximate cause of the damages, the verdict should be for the appellee. Of course if the appellant negligently failed to have a tail light it would be liable, but if the tail light was extinguished by any means other than the negligence of appellant, it would not necessarily entitle appellee to recover, although it might be the proximate cause of the injury."

The appellate court of Illinois (Chicago, First District), in the case of *McDermott v. McKeown Transportation Co.*, 263 Ill. App. 325, after a lengthy discussion of principles similar to those applicable to the case at bar, said:

"In the instant case we think the theory of the defendant must be sustained. It would not be liable even if the rear light was not lit at the time of the accident, if the jury believed from the evidence that such failure was occasioned without negligence on defendant's part."

The rule laid down was followed in the later case of *Price v. Bailey*, 265 Ill. App. 358, in which the court said:

"But even if, at and just before the collision, the light on the rear of the truck was not burning, this would not of itself impose liability. In *McDermott v. McKeown Transp. Co.*, 263 Ill. App. 325, we have recently held, under somewhat similar circumstances, that the defendant would not be liable even if the rear light was not lit at the time of the accident if the jury believed from the evidence that the failure of the light was occasioned without negligence on the defendant's part.

"We hold that plaintiff failed sufficiently to prove the charges of negligence in respect to the light, and we also hold that there was no evidence tending to show that the accident was caused by the wanton and wilful operation of defendant's truck."

 Respondents attack the testimony of appellant Moye, in so far as he stated that, after the collision, the tail-light on the truck was still in operation. While, as we read the evidence, this testimony is quite as credible as that of respondents themselves, we follow the trial court in assuming that, at the time of the collision, the electric lights on the rear of the truck were not shining.

Respondents base much of their argument upon the weight to be given to the findings of the trial court, but an analysis of the findings discloses that the judgment is based upon no more than a finding which is a conclusion of fact, rather than a finding, to the effect that appellant should have known that, at the time of the accident, the truck was not displaying lighted red

lights. In the case at bar, there is little conflict in the evidence, and no reason exists for applying the rule laid down by this court in the case of *Kelly v. Bank,* 188 Wash. 614, 62 P. (2d) 1359, relied upon by respondents, in which this court stated that, it appearing that the evidence was in utter conflict, and there being substantial evidence in support of the findings of the trial court, it could not be held that the evidence preponderated against such findings.

The matter of alleged negligence on the part of one responsible for the operation of a motor vehicle because of the failure of the car's tail-light to continue to function is, as has been stated and as indicated by the authorities, a question of considerable difficulty. Undoubtedly, the electric bulb may at any time cease to function, or the light for some other reason may suddenly cease to shine, without any fault on the part of the person in charge of the vehicle, and without his becoming aware of the fact that the light has gone out. The determination of the responsibility of the owner of the vehicle for alleged negligence must often depend, to some extent at least, upon testimony of the owner of the car or his agents as to inspections and examinations made at some time previous to the injury which it is claimed resulted from the negligence of the owner of the car. Often such testimony may be the only evidence which can be produced by the owner of the vehicle. Generally speaking, it is competent, and should be considered by the trier of the facts.

In such a case, tried, as was the case at bar, to the court, the opinion of the trial judge as to the weight to be given to the testimony of those who stated that inspections had been made at a reasonable time before the accident, is of the first importance. We have held

that a jury is not bound to believe interested testimony, and doubtless, in a case tried to the court, the court might be convinced that the testimony of certain interested witnesses, even though not directly contradicted by other testimony, was not to be believed, judging from its subject matter or from the court's observation of the witnesses while testifying. In the case at bar, however, the court in its oral opinion stated that the witnesses appeared to be telling the truth. Reading the statement of facts, we find nothing which causes us to reach a different conclusion.

If, then, the trial court, who saw and heard the witnesses, believed that the truck had been inspected at four o'clock in the afternoon on the day of the accident, and that the rear lights were shining half an hour or less before the collision, it is difficult to understand upon what theory appellants were held negligent. How should appellants have known that the lights on the rear of the truck were not shining? It was not enough, to justify a judgment in respondents' favor, that the court should believe that the lights on the rear of the truck were not shining at the time of the collision; appellants must have been in some manner *negligent*.

Had the trial court stated that it was not impressed with the truth of the story told by appellants' witnesses in regard to this phase of the case, or that it deemed such testimony unworthy of belief, a different question would be presented. The view of the court, as expressed in its oral opinion, is of importance and carries much weight. It is unthinkable that the trial court in its oral statement was merely employing idle words. Such a summing up of the evidence is a most important step in the trial and decision of a law suit, and on review of the judgment is entitled to most careful consideration.

This case was tried to the court, and, *save as to conflicting testimony,* we are as well able to determine the effect to be given to the evidence as was the trial judge. In any event, as to the testimony of the witnesses, we have the benefit of the court's statement that the witnesses appeared to be telling the truth.

Respondents attack the evidence of appellants to the effect that their trucks were inspected daily, for the reason that it appears that a reflector broken by the collision which is the basis of the case at bar was not removed for some months thereafter. Little weight is to be attached to this matter, as a red reflector, although cracked, may function exactly as well as a perfect one.

We are of the opinion that the record fails to show any basic negligence on the part of appellants.

While it would appear that the headlights on the Walsh car were defective, and that the driver of the car was grossly negligent in proceeding at twenty-five miles an hour on a dark, rainy night, when his headlights were functioning so poorly as to illuminate the road for no more than thirty feet, and in failing to see appellants' truck in time to avoid striking it, our view of the basic principles involved renders discussion of this phase of the case unnecessary. The same is true as to the contributory negligence of respondent Brotherton, who, it might well be argued, under all the circumstances, should have assisted the driver in maintaining a careful lookout, but who was paying so little attention to the road ahead that he never saw the truck at all, the actual impact being the first information he had that there was an obstruction upon the road ahead of the Walsh car.

The evidence failing to disclose any negligence on

the part of appellants, the judgment appealed from is reversed, with directions to dismiss the action.

STEINERT, C. J., MAIN, BLAKE, GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.

HOLCOMB, J. (dissenting)—The statement by the trial judge, stressed by the majority, to the effect that he believed the witnesses on both sides were telling the truth, was, of course, merely "a sop to Cerberus" to conciliate the losing parties and counsel. At any rate, he found to the contrary. He found that the red tail-light of appellants' truck was not showing at the time of the accident, and the majority presumes to the contrary. That is a presumption not borne out by any evidence or fact and contrary to the finding of the trial judge. The testimony was mostly by interested witnesses, which the trier of the facts may always disregard wholly or partially.

Neither do I agree with the statement made by the majority that "we are as well able to determine the effect to be given to the evidence as was the trial judge." This court is never in such a position. We have said so many times that a trial judge is so much better able to judge of the weight and credibility of witnesses than we, that it is useless to enumerate the cases. This rule, however, seems lately to be more honored in the breach than in the observance.

The judgment was right and should be affirmed. For the foregoing reasons I dissent.

MILLARD, J. (dissenting)—I agree with Holcomb, J., that, by the majority opinion, this court has again flagrantly breached another rule which Bench and Bar were led to believe constituted, in effect, an ancient landmark. The admonition, "Disturb not the ancient landmarks," if observed, makes for stability, per-

manency. The judgment should be affirmed. The trial court said no more than that each of the witnesses thought his or her testimony was true.