[No. 27997.   Department Two.   June 9, 1941.]

IVAN L. HYLAND, *as Receiver, Appellant,* v. CITY GAR-
BAGE & CONTRACTING COMPANY, INC., *et al.,*
*Respondents.*[1]

[1]Reported in 114 P. (2d) 153.

*Hyland, Elvidge & Alvord* and *Monroe Watt,* for appellant.

*Croson, Johnson & Wheelon* and *Robert Beresford,* for respondents.

DRIVER, J.—This is the third time the affairs of the Cities Contracting Company (hereinafter called the partnership), the central figure of the present controversy, have been before this court. The two former occasions were *Kelly v. Bank,* 188 Wash. 614, 62 P. (2d) 1359, and *Bank v. Nelson,* 199 Wash. 631, 92 P. (2d) 711. The opinions in those cases contain a full account of the origin and history of the tempestuous venture, which seems to have been characterized from its inception by bitter dissension among its members.

The partnership was formed in November, 1932, for the sole purpose of collecting and disposing of garbage for the city of Seattle under a five-year contract, which extended to and included the 18th day of January, 1938. Immediately prior to the expiration of the contract, the names of the partners and their respective shares were as follows: George Nelson, 64%, Arthur

Bank, 24%, and Ray Kelly, 12%. For some time, Mr. Nelson, as manager, had been in charge of the partnership enterprise. Learning that several months would elapse between the termination of the old garbage contract and the awarding of a new long-term one by the city, he had organized a corporation named the City Garbage & Contracting Company, Inc., to undertake a contract for disposal of the city's garbage during the interim. He was a director and the president of the corporation and the holder of 52% of its capital stock. The other two directors, each of whom had 4% of the stock, were an accountant and a timekeeper of the partnership. An additional 4% of the stock was issued to the partnership's bookkeeper, and 16% was set aside for Mr. Kelly, but he never accepted it. The remaining 20% was not issued. No payment was made on any stock by any one other than the initial paid-in capital of five hundred dollars, which was contributed by Mr. Nelson.

On January 18, 1938, acting on behalf of the partnership, Mr. Nelson leased the fleet of garbage trucks and other operating equipment, which were then in his possession, to the corporation under the following written agreement:

"Cities Contracting Company, a copartnership, Party of the First Part, and City Garbage & Contracting Company, Inc., a corporation, Party of the Second Part, agree as follows:

"Cities Contracting Company is the owner of trucks and equipment as per the attached Exhibit 'A' which is by reference made a part hereof; said trucks and equipment are hereby leased to City Garbage & Contracting Company, Inc., for a term of five (5) months, beginning January 19, 1938, at a rental of five (5) per cent per month of the appraised value of said equipment, which appraised value is $28,864.00. Party of the Second Part agrees to pay Party of the First Part rental for the first month on February 19, 1938, and for each month

thereafter on the last day of the month of use, and Party of the Second Part agrees to re-deliver said trucks and equipment to the Party of the First Part on the termination of this contract in as good condition and repair as when received, ordinary wear, tear, and depreciation excepted.

"Dated this 18th day of January, 1938.

"CITIES CONTRACTING COMPANY
"By GEORGE NELSON
"CITY GARBAGE & CONTRACTING COMPANY, INC.
"By EMIL BAUMANN—Secretary."

On January 19th, the corporation entered into a contract with the city for the collection and disposal of its garbage for the identical period covered by the foregoing rental agreement. The corporation filed its statutory bond, on which George Nelson and J. L. McLean were the sureties, and, with the use of the leased equipment, proceeded to perform the contract.

At the instance of Mr. Bank, Ivan L. Hyland was appointed receiver of the partnership on February 3rd. On March 4th, the corporation tendered to the receiver the rental for the first month, at the rate specified in the lease, but the tender was refused. The receiver then petitioned his court to determine the reasonable rental value for the property, and the court fixed it at $2,750 a month. Upon the corporation's refusal to pay this rental, the receiver, pursuant to orders of the court, sold the equipment to a third person, and, on April 5, 1938, took it from the possession of the corporation and delivered it to the purchaser.

Thereafter, the receiver brought the present action to recover from the corporation and the sureties on its statutory bond the reasonable rental value of the property, at the rate specified by the receivership court, for the period from January 19th to April 4th. The corporation cross-complained against the receiver for damages which it claimed had resulted from his retaking

of the equipment before its interim garbage contract with the city had been fully performed. A trial to a jury resulted in a verdict against the receiver and in favor of the corporation on its cross-complaint, and judgment was entered accordingly. Motions for a new trial and for judgment notwithstanding the verdict were denied, and the receiver has appealed.

For convenience hereinafter, George Nelson will be referred to as respondent Nelson.

We think it should first be pointed out that the question whether, under the circumstances which we have just stated, the fiction of the corporate entity of the respondent corporation should be disregarded, is not before us for determination. The reason is stated by appellant in his reply brief as follows:

"At the outset please note that appellant has not argued to this Court the question: 'Was the Corporation the *alter ego* of George Nelson?' This is admittedly a question of fact for the jury. The Court submitted this question to the jury and the jury inferentially, at least, answered the question in the negative. Since exceptions were not taken to the Court's instructions on this point, the question is not here open for argument."

The dominant question presented for solution by appellant's assignments of error is this: Was the rental agreement between the partnership and the respondent corporation invalid and ineffective as a matter of law? The question is essentially one of agency. Respondent Nelson, as one of three partners, negotiated and signed the agreement on behalf of the partnership. Was he, under the circumstances, authorized to bind his copartners?

In a general or trading partnership, each partner is a principal in his own behalf and an agent for the other members. For all purposes within the scope and purpose of the partnership business, he is authorized

to act as general agent to bind the firm and his co-partners. 47 C. J. 826, § 290; 20 R. C. L. 882, § 94.

As to non-trading partnerships, however, there is a different rule, which was stated in *Gordon v. Marburger,* 109 Wash. 496, 187 Pac. 354, 9 A. L. R. 369, as a quotation from Judge Dunbar's opinion in *Snively v. Matheson,* 12 Wash. 88, 40 Pac. 628, 50 Am. St. 877, as follows:

" 'The presumption is that one partner has no power to bind the other partners. Hence, before recovery can be obtained upon a contract entered into by one partner in a non-trading partnership against the other partners, it must be affirmatively shown by the party attempting to bind the non-contracting partners, either that the authority to bind was conferred by the articles of copartnership, or that authority had been specially conferred, or that it had been the custom of such partnership to recognize this right to such an extent as would give innocent dealers a right to rely upon the custom.' "

The foregoing statement was also quoted with approval in Judge Chadwick's opinion in *Tilden v. Pederson,* 88 Wash. 254, 152 Pac. 1021.

In the case at bar, the scope of the partnership business was limited to the disposal of garbage under one contract with the city of Seattle and did not directly or indirectly include buying and selling for profit. Manifestly, it was a non-trading partnership. Crane on Partnership, 193, § 50; 47 C. J. 645, § 16(3); *Snively v. Matheson, supra.*

The burden, then, was upon the respondents to show affirmatively that the leasing of the operating equipment of the partnership by respondent Nelson, under the rental agreement, was authorized (1) by the articles of partnership, or (2) expressly by the non-participating partners, Kelly and Bank, or (3) by implication arising from the custom or usage of the business.

██ It is not claimed that authorization was conferred by the articles of copartnership, nor did the respondents directly offer any proof that the leasing of the partnership property was expressly authorized by Kelly and Bank. The only testimony which tended to establish such authorization was brought out on the cross-examination of respondent Nelson. It is difficult to summarize this testimony because of its indefinite and ambiguous character, but, viewing it in the light most favorable to the respondents and giving them the benefit of every reasonable inference, it was substantially as follows:

Before the expiration of the five-year contract, there had been some discussion and negotiation among the partners relative to the leasing of their garbage equipment to the corporation. Kelly and Bank had indicated that such an arrangement would be acceptable to them, but, subsequently and before the rental agreement was signed, had changed their minds and withdrawn their consent.

After testifying to the foregoing effect, however, respondent Nelson was confronted with some former statements which he had made as a witness at one of the receivership hearings, and the following further cross-examination ensued:

"Q. (Reading) 'Mr. Dumett: One other question. You did not discuss this [rental] agreement or the substance of it with Mr. Bank, Mr. Arthur Bank, before you and Mr. Baumann signed it, did you? The Witness: I did not.' Did you so testify? A. Yes, we never discussed it with Bank, but I discussed [it] with his attorney. Q. You did? You do answer that that was your answer? A. Yes, that is correct. I have not talked with Bank for a long time."

There is no evidence whatsoever in the record that Mr. Bank's attorney had any authority to consent to the leasing of the partnership property. On the other

hand, Mr. Bank specifically denied that his attorney had such authority. Moreover, he and his attorney, as well as Mr. Kelly, testified to the effect that they were not informed of the rental agreement and knew nothing about it until after it had been signed.

As to whether or not respondent Nelson had implied authority to make the rental agreement, little need be said. The sole business of the partnership was to collect and dispose of garbage for the city of Seattle. The leasing of all the operating equipment was entirely outside the scope of the business, and such a thing had never before been done by respondent Nelson or by either of the other partners. There was no proof of any usage or custom from which it could be inferred that respondent Nelson had any authority to act for his copartners in any such transaction.

Since there was no substantial evidence, or reasonable inference from the evidence, that respondent Nelson was authorized to bind his copartners by the rental agreement which he signed in behalf of the partnership, there was nothing for the jury to pass upon with respect to its validity. The agreement was invalid as a matter of law.

The respondents contend, however, that it was the duty of the appellant, within a reasonable time after his appointment as receiver of the partnership, either to affirm or disaffirm the rental agreement, and, adopting the language of their brief, that: "The possession of the trucks by the City Garbage & Contracting Company was ratified by the failure of the receiver to avoid the contract."

▮▮▮ Conceding that, under certain circumstances, an agent's unauthorized contract may be ratified by the principal by his remaining silent and failing to repudiate it within a reasonable time, nevertheless respondents' contention is untenable because there is no

factual basis for its support in the present case. There is convincing evidence that the appellant affirmatively repudiated the rental agreement, and there is nothing to the contrary in the record. It appears that he did not learn of the agreement, or at least of its terms, until about March 4th, when the respondent corporation sent him a check as an offer of payment of the first month's rental. It is not disputed that he thereupon refused the offer. Appellant then attempted to collect rental at a higher rate, which the receivership court, at his request, found to be the reasonable rental value of the leased property. Such conduct unequivocally signified his election to repudiate the rental agreement.

It seems to be the position of the respondents that adoption of the agreement was implied by the appellant's delay in taking the partnership property from the corporation, but we think that, under the circumstances, such delay was not even sufficient to constitute substantial evidence of ratification. During the time the appellant allowed the property to remain in the possession of the respondent corporation, he was trying to make arrangements for a larger rental for its use, a course of conduct which was clearly inconsistent with affirmance of the invalid lease, and could not have misled respondent corporation to its detriment. When the appellant was appointed receiver on February 3rd, the corporation was already bound by its agreement to dispose of the city's garbage for a period of five months, and, since January 19th, under an invalid lease, had been using the partnership equipment to perform the contract. Certainly, the corporation was not placed in any worse situation merely by being permitted to keep and to use the equipment until April 5th.

As authority for their contention that the appellant constructively ratified the rental agreement, the re-

spondents rely upon *Crawford v. Gordon,* 88 Wash. 553, 153 Pac. 363. In that case, the receiver of an insolvent railway company purchased six railway cars under a contract of conditional sale, which reserved title in the vendors. The first payment, amounting to approximately one-fifth of the purchase price, was paid, and the cars were delivered. Thereafter, the Federal court, which had appointed the receiver, concluded and adjudged that it did not have jurisdiction, and receivers appointed by a state court took over the property of the insolvent company. Several months later, the vendors duly presented to the state receivers a claim which set forth the contract and claimed title to the cars subject to its terms. The receivers endorsed the words "Proof required" upon the original claim, but took no other action. After a further delay of approximately nine months, the vendors instituted a proceeding to enforce collection of the balance due them. During all this time, the state receivers had retained and used the property. This court held that the contract was not void, but voidable, and that the receivers had ratified it by their conduct.

The case is clearly distinguishable. There, the receivers accepted substantial benefits under an executory contract before attempting to disaffirm it. In the instant case, the appellant accepted no rental or other benefits under the lease agreement.

It follows from the conclusion which we have reached with reference to the invalidity of the rental agreement that there was a failure of proof as to the cross-complaint of the respondent corporation. It did not claim, either in the pleadings or at the trial, that any damage had resulted from the *manner of the taking* of the partnership equipment by the appellant. It complained only of the damages resulting from the loss of possession and use which the taking occasioned. The cross-

complaint, therefore, necessarily was based upon the premise that the corporation had the lawful right of possession under the rental agreement.

The appellant maintains that the respondent corporation was bound by the finding of the receivership court that the reasonable rental value was $2,750 a month, and, consequently, that the trial court should have awarded him a recovery on that basis as a matter of law. Respondent Nelson, individually, was bound because of his appearance in the receivership proceedings, appellant asserts. It follows, he argues, that the corporation also was bound, since Nelson was its president and controlling stockholder, and there was a substantial identity of interest between them.

The respondents, on the other hand, contend that the finding of rental value of the equipment was not intended to constitute a binding adjudication as to either respondent Nelson or the corporation, but was merely an authorization and instruction by a court to its receiver.

This contention, we think, is sound. The records of the receivership proceedings, to which we are about to refer in this connection, were offered in evidence by appellant at the trial, and some were admitted while others were not; but all of them are before us in the record on this appeal. The appellant's (receiver's) petition, which requested the court to make the finding of rental value in question, contained the following statement:

"That your petitioner realizes that the said City Garbage & Contracting Company, Inc., is not a party to this proceeding but that it is represented by the same counsel which represents the defendant George Nelson, namely, Eggerman & Rosling, and if the said City Garbage & Contracting Company, Inc., is willing to try to dispose of this matter, it will expedite the closing of this receivership. That your petitioner is willing

to submit to this Court the question as to the reasonable rental value of the said trucks and equipment if the said City Garbage & Contracting Company, Inc., is willing to do so, and if, on a hearing being had upon this petition, it should appear that said corporation is not willing to submit the matter to this Court in this proceeding, your petitioner desires authority and instruction to bring an action against the said City Garbage & Contracting Company, Inc., and its bond filed in the above entitled Court according to the claim hereto annexed, marked Exhibit 'A', so that the question as to the reasonable rental value of said trucks and equipment can be finally adjudicated as between your petitioner and the said City Garbage & Contracting Company, Inc., as your petitioner does not know of his own knowledge of any agreement made between the partnership and the said City Garbage & Contracting Company, Inc., fixing the amount of said rental."

It appears from the foregoing excerpt that, in this petition, the appellant requested (1) that, if the respondent corporation was willing, the court determine the rental value of the equipment, or (2), if the corporation was not willing, that the court authorize the appellant to bring an action against the corporation and its statutory bond *in order that the reasonable rental value of the equipment could be finally adjudicated.* Also, it should be noted that the appellant asserted no claim and made no demand against respondent Nelson individually for rental of the equipment.

Evidently, the respondent corporation did not consent to try out the issue in the receivership court. So far as the record discloses, it was never served with process in the receivership proceedings, it entered no voluntary appearance therein or otherwise submitted to the jurisdiction of that court.

The order, which was entered on the receiver's petition, after reciting the appearances of the various parties, continued as follows:

" . . . and the Court having heard the evidence finds as a fact that the reasonable monthly rental of the trucks, garage and shop equipment above mentioned is the sum of $2750.00 per month, and

"IT IS, THEREFORE, ORDERED, that the said Receiver, Ivan L. Hyland, forthwith make demand for the payment of $2750.00 per month for the rental of said trucks and equipment for the time the same have been in use by said City Garbage & Contracting Company, and that said Receiver shall make whatever efforts as in his opinion shall be necessary to expedite the collection of such rental."

This order did not run against any person nor direct anyone to pay any sum whatsoever. The respondent corporation was not before the court, and the order does not mention respondent Nelson except to note his appearance by way of recital. The following statement in a subsequent order in the receivership proceedings, we think, further indicates that the court did not intend its finding of value to be a final and binding adjudication:

"IT IS FURTHER ORDERED that any and all sums over and above the sum of $1443.20 per month [the rental specified in the lease agreement] which said receiver may receive as such rental shall be held by him as an ear-marked and special account until further order of the Court so that if it subsequently appears that rental in excess of said $1443.20 per month is excessive and the Receiver should not be entitled thereto, then such excess amount shall be reimbursed . . . "

The order of the receivership court fixing the reasonable rental value was not a binding adjudication of such value as to either the respondent Nelson or the respondent corporation. Hence the amount which the appellant is entitled to recover from the respondent corporation and the sureties on its statutory bond, on account of the corporation's possession and use of the partnership property from January 19th to April 4th,

presents a question of fact which must be determined as such.

The judgment is reversed, with direction to the trial court to dismiss the cross-complaint of the respondent corporation and to grant appellant's motion for a new trial.

BEALS, STEINERT, BLAKE, and MILLARD, JJ., concur.

[1]Reported in 114 P. (2d) 159.