[No. 17575.   Department One.   March 8, 1923.]

DELANZO P. SNYDER, *by his Guardian ad Litem P. D. Snyder, Appellant,* v. LOUIS C. SMITH *et al., Respondents.*[1]

HIGHWAYS (53, 57)—MOTOR VEHICLES—MEETINGS AND CROSSINGS—NEGLIGENCE—EVIDENCE—SUFFICIENCY.  The negligence of a stage driver, approaching a highway intersection simultaneously with a motor cycle, is established by evidence that he was exceeding the speed limit, traveling thirty-nine or forty miles an hour and blew no horn and gave no warning.

SAME (53, 57)—MEETINGS AND CROSSINGS—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY.  A motorcyclist, struck at a highway intersection by a stage, is guilty of contributory negligence precluding a recovery, where the stage was simultaneously approaching the intersection from the right and had the right of way, and notwithstanding he saw the stage and had his motor cycle under perfect control so that it could have been stopped within six feet, he undertook to cross ahead of the stage, when the rear of his machine was struck by the stage.

SAME (53, 57)—NEGLIGENCE—LAST CLEAR CHANCE—EVIDENCE—SUFFICIENCY.  The doctrine of last clear chance does not apply where a stage driver, approaching a highway intersection from the right, had the right of way and could assume that an approaching motorcyclist, with his machine under perfect control, would obey the law and not usurp the right of way, in the absence of any testimony or inference that he could have averted the accident after discovering plaintiff's negligence.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 13, 1922, upon granting a nonsuit, dismissing an action for personal injuries sustained by a motorcycle rider in a collision with an auto stage.   Affirmed.

*Walter S. Fulton,* for appellant.

*Poe & Falknor,* for respondents.

MACKINTOSH, J.—On the afternoon of July 24, 1921, the appellant, aged eighteen years, was riding a motor-

[1] Reported in 213 Pac. 682.

cycle on the Pacific Highway easterly from the city of Tacoma, and the respondent was driving an automobile stage on the Pacific Highway, coming towards the city of Tacoma. At Fife station, one driving on the Pacific Highway makes a turn to the left, changing the course from a northerly to a westerly direction, and it was at this turn that the collision occurred between the appellant and respondent, which resulted in injuries to the appellant for which this suit was brought.

At Fife station, the road from Tacoma also continues easterly for some distance. The trial resulted in a nonsuit at the close of appellant's case. The question for determination is whether there was evidence sufficient to entitle the case to go to the jury.

Taking, as we are compelled to do, the most favorable view to the appellant of his testimony, the facts may be stated as follows: Appellant was proceeding towards Fife station turn at the rate of about eight miles an hour. When he reached a point a little distance from the turn, he saw the respondent's stage at a distance of about 260 feet from him, around the turn, the stage at that time maintaining a rate of speed of from 35 to 40 miles an hour. The appellant reduced the speed of his machine to about four miles an hour, and when he had gone approximately 90 feet, the rear end of his machine was struck by the stage.

He claims that it was his intention not to make the turn on the Pacific Highway, but to have continued easterly on the course which he was pursuing, and that he thought the stage was to keep to the easterly side of a fountain which stands near the turn. The testimony, however, is conclusive—in fact, is testified to by himself, as will appear later—that whatever may have been the original idea in this respect, it was but a fleeting one, for he testifies that he saw the stage

make the turn to the west of the fountain, and that he still continued on his course. Assuming to be correct the testimony that the stage blew no horn and gave no warning, the negligence of the stage must be taken for granted by the lack of warning and the excessive speed, although, taking into consideration the speed that the appellant testifies he himself was proceeding and the distance he covered, they are not reconcilable with his estimate of the speed of the stage. But he having positively testified that the stage was making a speed of 35 to 40 miles an hour, the presumption must be that such was the fact. The negligence, then, of the respondent is established.

The facts are probably best summarized by the following excerpts from appellant's own testimony:

"Q. Now as I understand your testimony, when you got to 'A' as indicated on this map, you saw the stage coming at 'B.' A. Yes, sir. Q. How fast were you going at 'A'? A. About six miles. Q. There was nothing between you and the stage as it approached was there? A. No, sir; between the point 'A' and where I first saw the stage. Q. There was nothing to obstruct your view from 'A' to 'B'? A. No, sir. Q. And I understand that you made this blue mark here, didn't you (indicating on plat)? A. Yes, sir. Q. This stage followed the blue mark line from 'B' to 'C'? A. Yes, sir. Q. You saw it coming on that course, didn't you? A. Yes, sir. Q. It practically follows the curve, the blue line practically follows the curve line, doesn't it, about the same course? Doesn't it? A. Yes, sir. Q. You say at 'A' you were going at six miles an hour? A. Yes, sir. Q. Did you keep up that speed? A. No, sir; I was slowing down. Q. What was your average speed from 'A' to 'C'—the accident occurred at 'C' didn't it? A. Yes, sir. Q. What was your average speed from 'A' to 'C', what would you say? A. From seven to four miles an hour. Q. You say you were going six miles at 'A' and four miles at 'C'? A. About six at 'A' and four at 'C'.

Q. Then what was your average speed between 'A' and 'C'? A. About five miles. Q. While you went from·'A' to 'C' the automobile came from 'B' to 'C', didn't it? A. Yes, sir. Q. Now from 'A' to 'C' is at least one-third the distance from 'C' to 'B', isn't it? A. Yes, sir. . . . Q. Did you know that the law required you to give the right of way to a vehicle coming from the right? A. Yes, sir. Q. But you kept going right on? A. Intending to stop at the fountain. Q. But the vehicle was coming from your right? A. Yes, sir. Q. And you kept going right on? A. Yes, sir. Q. You didn't come head on, did you? A. No, sir. Q. Your front wheel didn't hit the front end of the automobile, did it? A. No, sir. Q. Your motorcycle was hit on the right side, wasn't it? A. Yes, sir. Q. And when it was hit on the right side, it was faced over here toward this building, wasn't it (indicating)? A. I didn't see it. Q. You were on it? A. I don't know which way it was faced when it was hit. Q. How far is it from 'C' to the inside of the curve? A. About 22 feet. . . . Q. At all times as you came round there there was ample room between where the blue line for the travel of the bus was, for your motorcycle, wasn't there, to the right of the bus? A. For the automobile to pass. Q. To the right of the bus was there at all times ample room for you to operate your motorcycle, wasn't there? That is right? A. There was room. Q. Sure, twenty-two feet you say, the more the better. How much space do you require in which to operate your motorcycle? A. How long? Q. In width? A. About a foot and a half. Q. And there was nothing between 'C' and the inside of the curve, was there? A. No, sir. Q. Now, going five miles an hour, how quickly could you stop your motorcycle? Instantly? A. In about a length. Q. How long is it? A. About five and a half feet. Q. You could have stopped in five and a half feet? A. Yes, sir."

The question remains whether the appellant was guilty of contributory negligence which would prevent his recovery.

We are satisfied, as was the trial court, that the appellant was so guilty. Laws of 1921, p. 272, ch. 96, § 28, subd. 6 (Rem. Comp. Stat., § 6340), provides that "Drivers, when approaching highway intersections, shall look out for and give right-of-way to vehicles on their right, simultaneously approaching a given point: . . ." The appellant and respondent were in a situation directly and specifically covered by this subdivision. They were approaching a highway intersection and were simultaneously approaching a given point. The duty then was upon the appellant to look out for the respondent's car, which he did, and to give it the right of way, it being a vehicle approaching from his right, which he did not. The respondent had the right to proceed on his course on the assumption that the appellant would obey the law. The appellant saw respondent's stage, knew its rate of speed, knew that it had the right of way, and his duty was to concede that right. This he did not do and his negligence is established, for, as we have so often held, the violation of a positive statute is itself negligence, and there can be no doubt that this negligence contributed to, and was the proximate cause of, the injury.

The only question that can possibly remain in the case is whether there was sufficient evidence to allow the submission of the case on the theory of last clear chance. We find nothing to sustain this theory. The respondent had the right to proceed. From anything testified to by the appellant, the respondent was not compelled to assume that the appellant's conduct would violate the law and that he was going to usurp the right of way, and there is no testimony, nor any reasonable inference from any testimony, that anything could have been done by respondent, after discovering appellant's negligence, to avert the accident. More-

over the negligence of the appellant was continuous and did not terminate until the impact of the two machines. *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Olson v. Payne,* 116 Wash. 381, 119 Pac. 757.

Conceding the respondent's negligence, we have here the case of one who, with his machine under absolute control, as he testifies, with no obstruction to his view, and with a full view of the approaching stage, continued on his course on a line in front of the stage in total disregard of the right of way given by the statute to the stage.

We are satisfied the trial court was correct in nonsuiting such a case. The judgment is affirmed.

BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.