[No. 26151. *En Banc.* November 9, 1936.]

BETTY HINTON, *a Minor, by Myrtle Hinton, her Guardian ad Litem, Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

*Kennedy & Schramm,* for appellant.

*A. C. Van Soelen, C. C. McCullough,* and *Tom M. Alderson, Jr.,* for respondent.

HOLCOMB, J.—This action is for damages for personal injuries alleged to have been caused by the negligence of respondent in the operation of a cable car on its street railway system. Appellant, a minor, by her guardian *ad litem,* alleged in her complaint:

"That said collision occurred by reason of the negligent operation of said cable car by its operator, the agent and employee of the defendant, in that said operator operated said cable car at an excessive rate of speed, failed to timely sound any gong or other warning of its approach, failed to keep a lookout for other traffic at said intersection, and failed to stop

[1] Reported in 62 P. (2d) 46.

said car to avoid collision with the automobile in which plaintiff was riding.''

On August 26, 1935, at about one o'clock on a bright clear day, appellant, a minor ten years of age, was riding south on Fourth avenue on the front seat of an automobile owned and operated by her grandfather S. E. Svendsen. Her grandmother was riding in the rear seat of the automobile. At Madison street, the automobile collided with an eastbound cable car, hitting it almost broadside. The grandfather testified that he saw the cable car when about twenty-five or thirty feet from him; that he was familiar with that locality and the traffic thereabouts, and that he did not attempt to stop by putting on his brakes because he did not have time to do anything; that he had been over that street hundreds of times and knew that cable cars crossed Fourth avenue at that point.

At that intersection, Madison street, running east and west, rises on a grade of nineteen per cent from Third to Fourth avenue, but the intersection is approximately level. Fourth avenue runs north and south with a slight down grade to the south at this intersection. There is a double-track cable car line on Madison street. On Fourth avenue, the Seattle & Rainier Valley Railway Company operates a double-track electric railway. The northwest corner near this intersection is occupied by an automobile parking lot opposite the Y. M. C. A. building, which is located at the southwest corner.

The undisputed testimony is that the maximum speed of the cable car, under any circumstances, is 10.2 miles per hour. Several witnesses for appellant testified that they did not hear any gong or bell rung on the cable car, but appellant herself said she heard the gong of a car ring just before the collision, but

did not have time to tell her grandfather. He and her grandmother testified they did not hear a bell or gong until the moment of the collision.

There was testimony by the gripman and a disinterested newsboy that there was a car across Fourth avenue, parked on the west side in the vicinity of the Elks' Club parking lot. There is some dispute between these two witnesses as to whether the car was in motion or not, but at any rate it was visible when the gripman was about fifty feet west of Fourth avenue and was necessary to be taken into account as traffic in the vicinity of that intersection. The automobile of appellant was not visible to the gripman until almost upon the cable car. Even the driver of the car of appellant states that he did not see the cable car until it was almost upon him.

The trial court sustained the challenge of respondent to the sufficiency of the evidence on behalf of appellant and granted its motion for judgment. It thereafter denied motions for judgment notwithstanding the decision and in the alternative motion for a new trial. These are the only errors urged on appeal.

Disregarding the testimony on behalf of respondent, except that of the gripman, which was corroborated by the newsboy, that there was an automobile to be taken into account across the intersection as the cable car came up the hill, there is no evidence of primary negligence on the part of the gripman. Whatever negligence there was, was the negligence of the driver of appellant's car.

Appellant seeks to invoke the principle of last clear chance in aid of her recovery.

There was no opportunity for the gripman to save the other from injury after he saw, or should have seen by the lapse of sufficient time, the peril of the other.

"A motorman has the right to assume that a person on the street will exercise such care to avoid injury, and he may lawfully act on that assumption, until the conduct of the person warns him to the contrary. Here the motorman could not know that the appellant would drive onto the track in front of the car until he actually did so, and it was then impossible for him to stop in time to avoid the injury." *Johnson v. Washington Water Power Co.,* 73 Wash. 616, 132 Pac. 392.

That pronouncement applies very aptly here.

"Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or the proof of circumstances which will put the one charged to implied notice of the situation.

"There was no duty upon appellants to slow down or to take such care as the doctrine of the last clear chance demands, until they were put to the hazard of choice by some act of respondent." *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106.

See, also, *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684, and *Snyder v. Smith,* 124 Wash. 21, 213 Pac. 682.

The trial court was right in sustaining the challenge to the evidence and in denying the motions for judgment notwithstanding the decision, or for a new trial.

Affirmed.

MAIN, MITCHELL, TOLMAN, BLAKE, BEALS, STEINERT, and GERAGHTY, JJ., concur.

MILLARD, C. J. (dissenting)—I do not agree with the opinion. However, no good purpose would be served by a lengthy dissent.