[No. 27166.   Department Two.   May 16, 1939.]

FRANK R. PETERSON *et al., Appellants,* v. KING COUNTY, *Respondent and Cross-appellant.*[1]

[1]Reported in 90 P. (2d) 729.

*James R. Gates* and *Herbert L. Onstad,* for appellants.

*B. Gray Warner* and *F. M. Reischling,* for respondent and cross-appellant.

GERAGHTY, J.—On the morning of December 15, 1936, the plaintiffs, employed on a WPA project in King county, some twenty miles east of Kirkland, were on their way to work, riding in a Ford car owned and driven by the plaintiff Williams. Williams lived at Kirkland, and left there about 7:15. At Redmond, he was joined by Peterson and Austin. From Redmond, their course to the place where they were employed was over the Sunset highway.

The morning was cold and foggy. The fog varied in density; in places it would be light, and then heavy banks would be encountered. At about 7:45, while driving in one of these fog banks, so dense that the headlights of the car and a fog light, which it also carried, would not disclose an unlighted object for a greater distance than twenty feet ahead, the car collided with the rear of a motor-driven road grader owned by the defendant, King county, and operated by its employee, Sidney Stevens. The plaintiffs sustained personal injuries and damage to the Williams' car, for all of which they brought this action.

At the time of the collision, the Williams' car was moving at the rate of about twenty miles an hour. The grader weighed about five and a half tons, was seven feet wide, and was moving at the rate of seven miles an hour on its own side of the road. It was equipped with dual pneumatic tires on the rear wheels and single tires on the front wheels. It had no electric head or tail lights. The only provision for lighting was an ordinary kerosene lantern with a red globe, which Stevens testified he had lighted before leaving

Redmond and fastened with wire to a bracket on top of the left fender. After the accident, the lantern was found extinguished on the pavement. Stevens testified that he looked back and saw the lantern was burning about a minute and a half before the accident.

The county housed two graders at Redmond; the second was driven by Ralph Ingle. Both drivers left Redmond about 7:30, their destination being a dirt road where the graders were to be employed. To reach this road, they were required to drive easterly on the Sunset highway. The grader driven by Ingle was moving ahead of the one driven by Stevens. The plaintiffs testified that there was no light on the grader nearest them, but they could see a red light or flare some three to five hundred feet ahead. It is admitted that the lantern carried by the forward grader was burning at all times.

The cause was tried to a jury. After the return of its verdict in favor of the plaintiffs, the defendant moved for judgment notwithstanding the verdict and, in the alternative, for new trial. The court denied the motion for judgment notwithstanding, but granted the motion for a new trial for the assigned reason

". . . that the court committed error of law in giving Court's instruction number (8) eight by which the jury was instructed that a road grader was a vehicle under the laws of the state of Washington, in force at the time of the accident out of which the above action arose, and that said instruction was wrong for said reason and no other and should not have been given."

The plaintiffs appeal from the order granting a new trial, and the defendant cross-appeals from the order denying its motion for judgment notwithstanding the verdict.

In instruction No. 8, the court, after informing the jury that the road grader was a vehicle within the

meaning of the statutes regulating the use of motor vehicles upon the public highways, and was required to carry a red tail light, proceeded:

"If you find from the evidence that at the time and place of the collision there was insufficient light to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of 500 feet ahead, then it was the duty of the defendant, King County, to carry at the rear of said grader a lighted rear or tail light capable of exhibiting at any time a red light plainly visible under normal atmospheric conditions for a distance of 500 feet toward the rear, and that failure on the part of King County, or its servant, to have such a rear or tail light, or to have the same lighted, would constitute negligence, and if you find that defendant County did fail to have such a rear light, or failed to have same lighted at said time, and if you further find that such negligence was the proximate cause of the collision and resulting injuries, if any, to plaintiffs, and that plaintiffs were not guilty of contributory negligence, then you are instructed that plaintiffs are entitled to recover in this action."

While the 1937 legislature enacted a comprehensive law prescribing the law of travel, and regulating the operation and equipment of vehicles upon the public highways, superseding all earlier laws upon the subject, the issue in this case is to be resolved by reference to the laws in force at the time of the accident.

The 1927 legislature enacted chapter 309, p. 767, entitled:

"An Act relating to vehicles and regulating the operation thereof upon the highways of this state; providing for traffic signals and control thereof; providing for the proper equipment and devices to be used thereon, and for the inspection thereof; prescribing the powers and duties of certain officers, the collection, distribution and expenditure of fees; defining offenses and fixing penalties; making appropriations and repealing conflicting act and parts of acts."

This act was embodied in Remington's Revised Statutes, chapter 3 of Title 41, §§ 6362-1 to 6362-57 [P. C. §§ 196-1 to 196-57]. Section 2 of the act, p. 767, contains a long schedule of definitions. Vehicle and motor vehicle are defined as follows:

"(a) 'Vehicle.' Every device in, upon or by which any person or property is or may be transported or drawn upon a public highway excepting devices moved by human power or used exclusively upon stationary rails or tracks.

"(b) 'Motor Vehicle.' Every vehicle, as herein defined, which is self-propelled."

Laws of 1929, chapter 180, p. 455, amended this definition of "vehicle" by substitution of the words "muscular power" for "human power."

Section 27 of chapter 309, p. 795, as amended by Laws of 1933, chapter 156, p. 574, § 5, provides:

"Every motor vehicle and every trailer or semi-trailer which is being drawn at the end of a train of vehicles at the times and under the conditions specified herein shall carry at the rear a rear or tail light capable of exhibiting, at any time, a red light plainly visible under normal atmospheric conditions for a distance of 500 feet toward the rear . . . ."

Chapter 309, as amended, was effective at the time of the accident, and the appellants contend that, under its terms, a road grader was a motor vehicle, and required to carry the prescribed rear light, and that the court properly so instructed the jury. The respondent, on the other hand, relies upon two earlier laws, Laws of 1921, chapters 96 and 108, pp. 251, 322. Both chapters define "motor vehicle" in identical terms as follows:

" 'Motor vehicle' shall include all vehicles or machines propelled by any power other than muscular, used upon the public highways for the transportation of persons, freight, produce, or any commodity, except traction engines temporarily upon the public high-

way, road rollers or road making machines, and motor vehicles that run upon fixed rails or tracks."

Chapter 108, codified as chapter 4 of Title 41, Rem. Rev. Stat., §§ 6363 to 6381, was limited in its application to the licensing and regulation of *operators* of motor vehicles, the enforcement of regulations by fines and forfeitures, and the employment and payment of a highway police force,—matters outside the purview of the 1927 act, and has no bearing upon our immediate problem.

The scope of chapter 96, Laws of 1921, codified in chapter 2 of Title 41, Rem. Rev. Stat., §§ 6312 to 6361, was broadly outlined in § 1 of the act, p. 251, as follows:

"Except as otherwise provided by law this act shall be controlling:

" (1) Upon the registration and numbering of motor vehicles;

" (2) Upon the use of motor vehicles upon the public highways;

" (3) Upon penalties for the violation of any of the provisions of this act."

The act of 1927, chapter 309, the title of which we have already quoted, and which, by its terms, was to be referred to as the regulation vehicle operation act, covered essentially the matters embraced within the act of 1921. While no part of the earlier act was repealed by direct reference, § 56 of the later law, p. 812, provided that all acts or parts of acts in conflict with its provisions were repealed. The fact that these two acts are carried in Remington's Revised Statutes, 1932, tends to some confusion, although the compiler, in foot notes, repeatedly calls attention to the later act. A note subjoined to Rem. Rev. Stat., § 6313, § 2 of the earlier act, p. 252, containing the definition of "motor vehicle" on which respondent relies, states: *"A later enactment, superseding this section for all practical purposes; at least, as to traffic regulations:* See § 6362-2,

*infra.*" Section 6362-2 is § 2 of the 1927 act, p. 767, containing the definition of "vehicle" and "motor vehicle."

The respondent thus states its position:

"Under the laws of the State of Washington in force and effect in December of 1936, neither a road grader nor any other piece of road-making machinery was a 'motor vehicle' as defined therein. Having been specifically omitted from the classification of 'motor vehicles' by the legislature in the first instance, no law pertaining to 'motor vehicles' could be properly applied to a road grader until the exemption which had been specifically declared was as specifically repealed. This, the legislature, by subsequent legislation, has failed to do."

■ It may be conceded that, if the legislature, having once defined a term, thereafter enacted further legislation on the same subject without amending the definition, the scope of the later legislation would be controlled by the definition. But that is not the case here. The later act redefined "motor vehicle," and provided that such vehicles as therein defined should be subject to the provisions of the act. The earlier act, in its definition of "motor vehicle," excepted traction engines temporarily upon the public highways, road rollers, or road-making machines; the definitions of "vehicle" and "motor vehicle" in the 1927 act do not contain this exception.

"It is a settled rule that repeals by implication, although not ordinarily favored in law, are nevertheless effective when it appears that a legislative act is intended to cover the entire field of legislation upon a particular subject, or that subsequent legislation is contrary to, and inconsistent with, a former act." *State ex rel. Spokane etc. Branch v. Justice Court,* 189 Wash. 87, 63 P. (2d) 937.

■ While the respondent's argument is directed mainly in support of its position that a road grader was

excepted from classification as a motor vehicle in the 1921 act, and that this "exemption" was not expressly repealed by the 1927 act, it also makes some contention that a road grader is not a vehicle as defined in the later act, since it is not a device "in, upon or by which any person or property is or may be transported or drawn upon a public highway."

The grader was built and equipped in many respects like heavy duty trucks and was intended to be operated on highways in going to and returning from the places where it was to be employed in the work of grading. It was equipped to carry at least one person, the operator. If the legislature had not considered that such devices were vehicles, it would have been unnecessary to make the exception in the earlier acts upon which the respondent relies.

In *Emerson Troy Granite Co. v. Pearson,* 74 N. H. 22, 64 Atl. 582, the question was whether a traction engine was subject to registration and the payment of a fee under the laws of New Hampshire, which defined the terms "automobile" and "motor cycle" as including " 'all vehicles propelled by other than muscular power, except railroad and railway cars and motor vehicles running only upon rails or tracks, and road rollers.' " In the course of its opinion, the court said:

"While the traction engine in suit may not be an automobile, motor cycle, or vehicle, according to a strict interpretation of those terms, it appears to be such within the meaning of this statute. It certainly is a vehicle in the sense that it carries the operator and the materials used in its operation. 'It is a carriage moving on land . . . on wheels.' Cent. Dict. The statute contains decisive evidence that the term was used in a sense sufficiently broad to include road rollers —machines that are not used for the carriage of persons or merchandise. If it had not been supposed that they were 'vehicles,' there would have been no reason for expressly excepting them from the statutory defini-

tion. The implication is irresistible that other machines, aside from road rollers, passing over highways, carrying only the operators and the materials used in their operation, are 'vehicles' within the meaning of the term as defined in the statute. There certainly are as forcible reasons for requiring the registration of a traction engine not confined to rails, and the licensing of its operator, as for requiring these acts in respect to an ordinary automobile."

In *Commercial Standard Ins. Co. v. McKinney,* 114 S. W. (2d) (Tex. Civ. App.) 338, it was held that a caterpillar tractor used to draw scarifiers in road construction work, was a "motor vehicle" as defined in the Texas statute. The statute defined "vehicle" and "motor vehicle" in language almost identical with our own:

" ' "Vehicle" means every device in, or by which any person or property is or may be transported or drawn upon a public highway, except devices moved only by human power or used exclusively upon stationary rails or tracks. "Motor Vehicle" means every vehicle as herein defined which is self-propelled.' "

In *Trussell v. Ferguson,* 122 Neb. 82, 239 N. W. 461, where the plaintiff was driving a wagon to which was hitched a tandem tow of two mowers, it was held that a mower was a vehicle within the meaning of rules promulgated by the department of public works pursuant to legislative authority. The rules defined a "vehicle" as " 'Any conveyance propelled or drawn by its own or other power' "; and provided that " 'A vehicle shall not tow more than one other vehicle . . .' "

In *Sant v. Continental Life Ins. Co.,* 49 Idaho 691, 291 Pac. 1072, suit was brought upon an accident policy by the administrator of the estate of the beneficiary, who died as the result of injuries sustained while riding on

a road grader drawn by horses. The policy provided for payment for loss of life

" 'By the wrecking or disablement of any automobile . . . or horse-drawn vehicle not plying for public hire in which the insured is riding or driving . . .' "

In upholding a judgment in favor of the plaintiff, the court said:

"Under the definition of a vehicle given in the authorities cited by appellant . . . that it is in substance 'an instrumentality for transporting persons or things from place to place,' the grader at the time of the accident was being so used. (*City of St. Louis v. Woodruff,* 71 Mo. 92; *Heib v. Town of Big Flats,* 66 App. Div. 88, 73 N. Y. Supp. 86; *White v. Loades,* 178 App. Div. 236, 164 N. Y. Supp. 1023.) The deceased was apparently as much 'in' the grader as one could be, and there is no dispute that it was horse drawn and that it was disabled to some extent, though not wrecked, but the terms 'wrecked' or 'disabled' are in the policy, in the alternative."

We are of the opinion that instruction No. 8 was correct, and that it was error for the court to grant a new trial upon the ground assigned.

This brings us to a consideration of the errors assigned by respondent on its cross-appeal. They are the denial of its challenge to the sufficiency of the evidence and the refusal of the court to grant the respondent's motion for judgment notwithstanding the verdict.

■ The appellants testified that the grader with which they collided did not carry a light. The driver, Stevens, testified that he lit the lantern before leaving Redmond, and that it was burning, at least, when he last looked at it, a minute and a half before the collision. The appellants further testified that they could see ahead of them, as they drove on, a red light some three to five hundred feet distant. The forward grader

driven by Ingle carried a lighted lantern with a red globe. The jury had a right to believe the testimony of the appellants that the rear grader was unlighted, and to infer that the red light observed by appellants was on the forward grader.

The question of contributory negligence was also for the jury. Without a warning to the contrary, the appellants could assume that a vehicle using the highways in the existing atmospheric condition would display a red light, as required by law, and that there was no vehicle using the road between them and the red light which they observed a safe distance ahead. Whether they failed in the degree of care imposed by the surrounding conditions, was for the jury to determine.

The order granting the motion for new trial is reversed, and the cause remanded to the superior court with direction to enter judgment upon the verdict.

BLAKE, C. J., BEALS, MILLARD, and SIMPSON, JJ., concur.