[No. 29717. Department Two. April 18, 1946.]

HARRY BISSELL, *Appellant*, v. SEATTLE VANCOUVER MOTOR FREIGHT, LIMITED, *Respondent*.[1]

'Reported in 168 P. (2d) 390.

*Cornelius C. Chavelle (Chavelle & Chavelle,* of counsel), for appellant.

*Truscott & Bovingdon,* for respondent.

JEFFERS, J.—This action was instituted by Harry Bissell, in the superior court for King county, against Seattle Vancouver Motor Freight, Limited, a corporation, to recover damages for injuries to his person and property alleged to have resulted from the negligent operation of a truck and trailer, owned and operated by defendant and being driven at the time of the accident by defendant's agent, Charles Creelman. The alleged negligence of defendant consisted of the operation of the truck and trailer in a reckless and careless manner on the streets of Seattle, in that the motor

vehicle did not display red lights or any lights whatsoever on the rear thereof, as required by law, and in that defendant failed to use due care or any care whatsoever in determining whether the rear end of the motor vehicle was equipped with lights or reflectors, as required by law, and in that the motor vehicle failed to carry any lights whatsoever and failed to carry any lighted lights on the rear thereof.

Defendant by its answer denied all allegations of negligence contained in the complaint and denied that any injuries plaintiff may have received resulted from any negligence of defendant or its agent.

Defendant alleged affirmatively that, if plaintiff sustained any injuries or damage, the same were proximately caused or contributed to by his own negligence, which negligence consisted of driving his automobile at an unlawful rate of speed, considering the conditions then and there existing at the point of operation, in failing to keep a lookout for other users of the highway, in failing to keep his car under control, in failing to have his car equipped with adequate brakes, and in failing to exercise any care or caution to avoid an accident when the imminence of such an accident should have been apparent to plaintiff.

The cause came on for hearing on March 27, 1945, before the court and jury.

The accident occurred in the 1600 block on Aurora avenue, in the city of Seattle, shortly after nine o'clock p. m., August 21, 1944. The night was clear, but dark, and the pavement was dry. The 1600 block on Aurora begins at Garfield street on the south and extends north about 420 feet to what is marked on plaintiff's exhibit No. 1 as gravel driveway. At this point, Aurora avenue has four lanes used by northbound traffic. The right-hand lane, or the one next to the curb, is seven feet wide, and was referred to by Mr. Wilkins, who prepared exhibit No. 1, as a parking lane. Immediately to the left of the parking lane are three ten-foot-traffic lanes for northbound traffic.

There is a standard bracket street light at the intersection of Garfield street, which overhangs the parking lane, and another light 420 feet north, in the same position relative to

the highway. There is a slight grade to the north on Aurora in the 1600 block.

Charles Creelman, on the night of the accident, was driving the truck and trailer here involved for defendant, having started on his regular run to Vancouver, B. C., and, at the time of the trial, Creelman was still driving the same truck and trailer on the Vancouver run. Creelman testified that there were headlights on the truck and eight clearance lights, six clearance lights on the trailer and two tail lights; that there were two reflectors on the back of the trailer and one on each bottom corner. Exhibits Nos. 2, 3, 4, and 5 were identified by this witness as being pictures of the truck and trailer taken a month or two prior to the trial. The witness stated they showed the equipment as it was the night of the accident; that there had been nothing added in the way of lights since the accident. The witness was asked to and did point out on the exhibits where the different lights and reflectors were, and an inspection of the exhibits bears out the witness' testimony.

Creelman left the terminal on the night in question about nine o'clock p. m. He did not check the equipment before he left, to ascertain whether or not the lights on the trailer were working, as that was part of the duties of other employees of defendant, and Creelman assumed it had been done. Before he left the terminal, Creelman turned on his lights, and the headlights were burning, but, as stated, he did not go back and look to see whether or not his trailer lights were burning.

At this point, we shall refer to the testimony of Austin Braley, who, on the night of the accident and at the time of trial, was shop foreman for defendant. This witness testified that it was part of his duties to check lights, brakes, and all running equipment, to make sure it was suitable for the road; that, on the night of the accident, John Thorsteinso helped him hook up the truck and trailer here involved. Mr. Braley described how the hookup was made, as follows:

"It takes two men, it requires two men normally to hook up a truck and trailer. I backed the truck into the trailer and he [Thorsteinso] made the coupling, secured the chains

and trailer hitch and light switch. He went on some other duty and I double-checked it for brakes, lights and running equipment."

Mr. Braley further testified that he turned on the lights, and that the trailer lights worked, as well as the truck lights; that all lights were working; that about thirty minutes later, Creelman left the terminal.

Mr. Thorsteinso, who assisted Mr. Braley in hooking up the truck and trailer, stated that the light cable from the trailer is connected with the truck by inserting the prongs on the light cable into a socket on the truck underneath the frame. In making the trailer hitch, there are two brake hoses which are connected up with the truck. This witness further stated that he checked the light connections and brake connections at the time he made the hookup. He did not actually turn the lights on.

When the operator of the truck turns on the truck lights, the trailer lights are also turned on, and, when the brakes on the truck are applied, the trailer brakes are automatically applied. In other words, all lights are turned on by one operation, and the same is true as to the brakes.

There is no dispute in the evidence as to what was done in the way of checking the running equipment on the truck and trailer about thirty minutes before Creelman left the terminal, nor as to the equipment then on the truck and trailer.

As stated, Creelman turned on his lights before leaving the terminal and proceeded down Alaskan way, eventually coming to Aurora avenue, where he was traveling north on the first traffic lane to the left of the parking lane, at about ten or fifteen miles per hour. He testified that he felt a slight jar, after which he pulled ahead a little and then over into the parking lane next to the curb and stopped. He got out of his truck and saw plaintiff's car about one hundred feet back of him. The left headlight on plaintiff's car was burning. Creelman then noticed that the tail lights on the trailer were not burning. He went back to see the people in plaintiff's car, after which he returned to his truck

and examined the plug on the trailer light cable and found a wire disconnected from one of the screws. He connected up the wire and got lights on the trailer. Mr. Creelman further testified that, when he got out of his truck after the accident, the clearance lights and tail lights on the truck were on. In other words, according to the testimony of this witness, the trailer lights were the only ones which were not on after the collision.

Plaintiff is a taxi driver and, at the time of the accident, was working for Far West Cab Service and was with that company at the time of trial. On the evening of August 21, 1944, he drove to the company's office to go to work, but, as there was no cab available for him, he started home. He was driving his own 1934 Ford V-8 sedan and left the office about nine p. m. Riding with him in the front seat was John Brest and, in the back seat, Ernest Stucky. Both of these men were also taxi drivers.

Plaintiff was familiar with Aurora avenue. Just before the collision, he was driving north on Aurora in the first lane to the left of the parking lane, at about thirty miles per hour. He had his headlights on low beam, commonly known as "city beam." He stated he could see lighted objects three or four hundred feet, and unlighted objects ten or fifteen feet ahead of him. According to plaintiff, the accident occurred near the steps that lead from Aurora down to Garfield, which would be near the light at Garfield and Aurora, to which we have referred. Plaintiff testified that this light was not burning; that he first became conscious of something ahead of him when he was ten or fifteen feet from the trailer. His language was: "I first saw the flash of something in front of me. What it was I didn't know." He put on his brakes and turned to the left but did not succeed in missing the trailer.

On cross-examination, the witness was asked, among others, the following questions:

"Q. You should look ahead to see where you are traveling? A. That is right. Q. You were not just before the accident? A. No. Q. Is it not true you just dropped your eyes and looked at the generator? A. Not a second's glance.

Q. Just at the time when you were within a few feet of the truck? A. Yes. Q. You were right on top of it, within two feet of the truck when you saw it? A. No, that was an approximation from driving and coming up so suddenly. Q. What was your approximation? A. The approximation when I say two feet,—it has been proven to me it could not be. The car would be completely wrapped up under the truck. On checking the distance it was more like ten or fifteen feet."

While plaintiff did not go up to examine the truck and trailer, he testified that, after the impact, there was absolutely nothing burning on the truck; that, just prior to the impact, he saw no lights of any kind ahead of him. Plaintiff further testified that his brakes were in good condition.

"Q. I am asking what distance could you stop in? A. With nothing in front and ordinarily parking, I imagine a person could stop in around thirty-five feet. Q. How far ahead could you see with the lights of your car at that time? A. With the headlights of my car thirty or thirty-five feet, ground level."

Plaintiff further stated that, when he got out of his car, the driver of the truck came up, and he (plaintiff) said: "Good Golly, don't you ever put lights on your truck?" to which the driver replied: "I didn't have any lights on it." Creelman denied that he ever made any such statement to plaintiff or any other person.

Plaintiff further testified that, after the accident, he was dazed.

"Q. What did you do immediately after the accident? A. Well, as soon as the accident happened I was dazed and I didn't quite know what it was. I got out of the car. I was able to get out and get the other fellow out through the other side and check where I was and I still was not sure what I hit. I could not see a thing ahead of us. There absolutely was not a visible object ahead of us. We were in the center traffic lane until the driver came and we saw what we hit. Q. How far did the truck proceed after the impact? A. About a couple blocks."

Relative to the lights at Garfield and Aurora and north of Garfield, we desire here to call attention to the testimony

of Mr. Snow, assistant superintendent of city lights. This witness testified that the city kept a record of when the street lights were changed, and that he was in charge of this record; that he had a record when the light at Garfield and Aurora and the first one to the north were changed; that no lights were changed on Aurora at Garfield or three or four blocks to the north in August, 1944. He further testified that the light at Aurora and Garfield was replaced on July 12, 1944, and that he had no record of its being replaced since that time. The first light to the north of Garfield was replaced on February 24, 1944, and was still in use; that no complaints had come to his office in regard to the lights being out; that the log at the substation at Seventh and Yesler shows that on the night of August 21, 1944, these lights were turned on at eight-forty-five p. m.

John Brest, who was riding in the front seat with plaintiff, testified that, on the night of the accident, lighted objects could be seen five hundred feet ahead. "Q. How far could you see an unlighted object? A. You could not see them."

This witness testified that he did not know what they hit until after the collision; that he examined what they hit after the accident, and that there were "no lights whatsoever"; that he could see no reflectors; that he saw no lights on the trailer prior to the accident. On cross-examination, this witness testified that the range of plaintiff's headlights was twenty-five to thirty-five feet, and that he could see anything which was in the range of the headlights.

Ernest Stucky, who was riding in the back seat of plaintiff's car, testified that, if the lights were bright enough, one could see lighted objects three or four miles, but that unlighted objects could not be seen at all; that the trailer had no lights burning in the rear prior to the accident, but it might have had in front. On cross-examination, this witness testified that one could see a man in front of the car if he was within range of the headlights; that the range of the headlights on low beam is thirty-five feet; that, when he first saw the truck, it was about two blocks ahead of plaintiff's car, and that it looked like the truck was against the curb; that he did not go up to the truck after the accident.

Mr. Ryan who investigated the accident, stated that, when he got there, the trailer had no lights on; that there was a tail light on the truck, but that this would not be visible to a car following the truck.

The jury returned a verdict in favor of defendant. Motions for new trial and for judgment notwithstanding the verdict were filed March 30, 1945, and, by the court, denied April 23, 1945. On the same day, judgment was entered on the verdict, and this appeal by plaintiff followed.

Error is assigned on the giving of instructions Nos. 17, 18, and 20; in refusing to give two instructions requested by appellant; in denying appellant's motion for new trial; in denying appellant's motion for judgment notwithstanding the verdict; and in entering a judgment of dismissal.

We shall discuss appellant's assignments of error in the order presented in his brief. It is appellant's contention that the court erred in giving instruction No. 17, for the reason that it was prejudicial, misleading, and an inaccurate statement of the law as applied to the facts in this case; that there was no evidence in the case to justify the giving of such instruction. Instruction No. 17 reads as follows:

"You are instructed that even though you find that at the time and place of the accident complained of the rear or tail lights on the trailer of the defendant had become extinguished, that fact in itself does not necessarily make the operator of said vehicle guilty of negligence.

"If in this case you find that the defendant made a reasonable inspection of the rear or tail lights on said trailer and exercised due care to determine that said tail lights were in fact burning, then you are instructed that the defendant was not guilty of negligence in this particular even though the rear or tail lights were out when the collision occurred.

"By the terms 'reasonable inspection' and 'due care to determine' is meant an inspection or testing or checking which showed the red lights burning at such a reasonable time before the collision as would cause a driver, in the exercise of reasonable care, to have reason to believe they were in fact burning at the time of the collision. The defendant would not be liable, even though the tail lights were not burning at the time of the collision, provided you find that the failure of the lights was occasioned without negligence on defendant's part."

Appellant argues that, by instruction No. 17, the trial court submitted to the jury the proposition that "if the rear or tail lights on a trailer at the time of an accident were extinguished, that fact does not constitute negligence."

Appellant further argues that, by instruction No. 17, the trial court took from the jury the issue of negligence and rendered Rem. Rev. Stat., Vol. 7A, § 6360-16 [P.P.C. § 291-5], a nullity. Appellant then quotes the following portion of that section:

"Every motor vehicle operated not in combination and every trailer and semi-trailer shall be equipped with a rear lamp capable of exhibiting a continuous red light plainly visible from a distance of five hundred (500) feet to the rear . . ."

Appellant further argues that the undisputed evidence shows that, at the time of the collision, the rear or tail lights were not burning and this, being in violation of a positive law, is in itself negligence; that to say that a violation of a positive law is not *necessarily negligence,* constitutes reversible error.

It is respondent's contention that, even if the lights of the trailer were out prior to the collision, under the facts in this case neither respondent nor the driver of the truck was guilty of negligence; that, at most, the evidence disclosed an involuntary violation of a statutory requirement, which occurred despite the exercise of ordinary care on the part of respondent or its agent. Respondent then cites the case of *Brotherton v. Day & Night Fuel Co.,* 192 Wash. 362, 73 P. (2d) 788, and cases therein cited, to sustain its contention that the court did not err in giving instruction No. 17. We shall later refer to the cited case.

It is admitted that, after the accident, the lights on the trailer were not burning, and there was the testimony of appellant and the two men riding with him that, just before the collision, they saw no lights.

It may be admitted that we have many times stated that the violation of a positive statute is itself negligence, and we therefore are in accord with the authorities cited in

appellant's brief, to wit: *Twedt v. Seattle Taxicab Co.,* 121 Wash. 562, 210 Pac. 20; *Snyder v. Smith,* 124 Wash. 21, 213 Pac. 682; *Benson v. Anderson,* 129 Wash. 19, 223 Pac. 1063; and *Price v. Gabel,* 162 Wash. 275, 298 Pac. 444. However, we have stated in several cases, and at least intimated in others, that a thing which is done in violation of positive law is in itself negligence, *in the absence of pleading and proof of such peculiar facts as would tend to justify the violation.* See *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331. We find the following statement in *Benson v. Anderson, supra:*

"In *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331, we said that this court 'is definitely committed to the rule that "a thing which is done in violation of a positive law is in itself negligence," *in the absence of pleading or proof of such peculiar facts as would tend to justify the violation.'* A number of cases are cited in the opinion to sustain the proposition, and we have in the following subsequent cases reaffirmed it. [Citing cases.]" (Italics ours.)

We find nothing, however, in the cited cases, other than the case of *Johnson v. Heitman* and the *Brotherton* case, *supra,* to both of which we shall later refer, which is helpful in determining the particular question now being considered, namely, that the court erred in not specifically instructing the jury that the failure of respondent to have tail or rear lights burning on the trailer, at the time of the accident, was negligence *per se,* regardless of the showing made by respondent as to inspection and reasonable care.

We again refer to appellant's brief, wherein he states:

"After scrutinizing the trial court's instructions, it becomes immediately apparent that it has removed entirely from the jury's consideration the well settled principle of law that the violation of a rule of positive law is negligence and it is likewise significant that nowhere in the court's instructions has this issue been submitted to the jury."

■ Admitting the general rule, that the violation of a positive statute constitutes negligence *per se,* and admitting that in many cases under the facts it would be proper to instruct the jury *that, if it found from a fair preponderance of the evidence that at the time of the accident the defendant*

*was doing some act prohibited by law, or failing to do some act required by statute, such violation of the statute would constitute negligence,* and admitting that, if the jury further found that such negligence was the proximate cause of the accident and resulting injuries, defendant would be liable, unless the jury further found that plaintiff was guilty of contributory negligence, nevertheless, in the instant case, under the facts, we are of the opinion it would have constituted error for the trial court to have given an instruction such as above suggested, relative to respondent's claimed negligence, without a limitation such as contained in instruction No. 17.

Instruction No. 11, as given, states:

"You are instructed that on the date of the accident in question that Rem. Rev. Stat. of the State of Washington, § 6360-17, which was in full force and effect at all times herein mentioned, and entitled: 'Trailer Lamps', provides:

" ' . . . every motor vehicle trailer and semi-trailer designed or used for the transportation of commodities, property or animals, or for the transportation of passengers, or otherwise a commercial vehicle, except for hire vehicles operated entirely within municipalities when their interiors are illuminated, shall display lighted lamps during hours of darkness as required in this section, except such lamps may be, but are not required to be, lighted when any such vehicle is upon a public highway which is sufficiently illuminated by street lamps to render any person or vehicle clearly discernible at a distance of five hundred (500) feet.' " (Rem. Rev. Stat., Vol. 7A, § 6360-17 [P.P.C. § 291-7].)

No objection was made to the above instruction.

By instruction No. 12, the court defined the hours of darkness to be from one-half hour after sunset to one-half hour before sunrise, and any other time when persons or objects may not be clearly discernible at a distance of five hundred feet.

Instruction No. 16, as given, states:

"You are instructed that if you find from a fair preponderance of the evidence introduced in this cause that at the time and place of the collision there was insufficient light to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of 500 feet

ahead, *then it was the duty of the defendant to carry at the rear of said trailer a lighted rear or tail light* capable of exhibiting at any time a red light plainly visible under normal atmospheric conditions for a distance of 500 feet toward the rear." (Italics ours.)

While instructions Nos. 11 and 16 do not, *in haec verba,* advise the jury that a violation of § 6360-17, *supra,* is negligence *per se,* it seems to us that is their necessary import.

In *Johnson v. Heitman, supra,* the court gave two instructions, among others, one consisting of a statement of the provisions of an ordinance of the city of Tacoma and the other advising the jury that, if they found that the defendant, at the time of the accident, was driving his car upon the left instead of the right-hand side of the street, their verdict must be for the plaintiff. Neither of the instructions given, nor any of the other instructions, in so far as the opinion shows, stated specifically that a violation of the ordinance was negligence *per se,* yet the court stated:

"Though the first two instructions do not *in haec verba* advise the jury that driving upon the left-hand side of a street is negligence *per se,* that is their necessary import."

We are of the opinion that, when the instruction defining negligence and instructions Nos. 11 and 16 are read in connection with instruction No. 17, the only reasonable inference which can be drawn from those instructions is that respondent would be guilty of negligence if the jury found the trailer lights were not burning at the time of the accident, unless they further found that respondent had made a reasonable inspection of the rear or tail lights on the trailer and had exercised due care to determine that the tail lights were in fact burning.

We stated in *Brotherton v. Day & Night Fuel Co.,* 192 Wash. 362, 73 P. (2d) 788:

"While it is true that violation of a statute is, generally speaking, negligence *per se,* it is also true *that such violation is not negligence* when due to some cause beyond the violator's control, and which *reasonable prudence* could not have guarded against. [Citing cases.]" (Italics ours.)

The cited case quoted from many other cases, among them we note the following quotation from *McDermott v. McKeown Transp. Co.*, 263 Ill. App. 325:

" 'In the instant case we think the theory of the defendant must be sustained. It would not be liable even if the rear light was not lit at the time of the accident, if the jury believed from the evidence that such failure was occasioned without negligence on defendant's part.' "

The *Brotherton* case had the following to say relative to the case of *Berkovitz v. American River Gravel* Co., 191 Cal. 195, 215 Pac. 675:

"The supreme court of California, in referring to an instruction by the trial court to the effect that, if at the time of the accident the truck which was run into did not have a red tail light shining, the defendant was guilty of negligence, said:

" ' "Instruction No. 5 is a correct statement of the law in *most cases where the violation of a statute is charged.* By the exercise of ordinary care, the driver of a motor vehicle at night would always know whether the headlights were burning and in such a case instruction No. 5 would be strictly accurate. The tail light, however, is not in the immediate view of the driver, whose attention is ordinarily directed ahead, and it cannot be the intention of the law that a watchman must be maintained over the rear light to observe whether it is constantly burning. It is well known that with the best of care coal-oil lights, as well as electric lights, sometimes go out. If one drives a motor vehicle in the night-time *when he knows, or in the exercise of ordinary care ought to know,* that the tail light is not burning, he is guilty of negligence. While ignorance of the law is no excuse, ignorance of the fact, *where ordinary care has been exercised, is a sufficient excuse.* Violation of an ordinance 'is presumptively an act of negligence and conclusively so until rebutted by evidence that it was justifiable or excusable under the circumstances.' " ' " (Italics ours.)

The *Brotherton* case also set out a requested instruction very much like instruction No. 17, which the trial court in the case of *Nelson v. Signal Oil & Gas Co.*, 10 Cal. App. (2d) 448, 51 P. (2d) 885, refused to give. The court held it was reversible error to refuse to give the requested instruction.

■ On the authority of the *Brotherton* case and cases

therein cited, we are of the opinion there was ample evidence in this case to justify the trial court in submitting to the jury the question of whether or not respondent had made a reasonable inspection of the lights on this equipment, including the tail lights on the trailer, and had exercised due care to determine that such tail lights were in fact burning.

The above statement is made fully realizing that the driver of the truck stated he did not personally get out and look at the trailer lights after he started his truck at the terminal and turned on the lights, and that he did not have occasion to examine or look to see if his trailer lights were burning between the time he left the terminal and the time of the accident.

We are therefore of the opinion that the trial court did not err in giving instruction No. 17.

■ Appellant contends that the trial court erred in giving instruction No. 18, which reads as follows:

"You are instructed that if you find from a fair preponderance of the evidence introduced in this cause that at the time and place of the collision the defendant's trailer did not have a rear or tail light burning, and that such failure was due to the negligence, if any, of the defendant as defined in the preceding instruction, and if you further find that such negligence, if any, was the proximate cause of the collision and resulting injuries, if any, to the plaintiff, and if you further find that an ordinarily prudent person, driving on the highway behind said truck and trailer under like circumstances, would not have observed the trailer, by the exercise of due care for his own safety, in time to have avoided the collision, then you are instructed that the plaintiff is entitled to recover in this action."

While perhaps this instruction could have been a little more plainly stated, we are of the opinion that when it is read in connection with the other instructions, some of which we have set out herein, the instruction is sufficiently plain to be understood by the jury, and properly states the law applicable to the facts in this case.

■ It is next contended that the court erred in failing to give the following requested instruction:

"You are instructed that if you find from a fair preponder-

ance of the evidence introduced in this cause that at the time and place of the collision there was insufficient light to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of 500 feet ahead, then it was the duty of the defendant to carry at the rear of said trailer a lighted rear or tail light capable of exhibiting at any time a red light plainly visible under normal atmospheric conditions for a distance of 500 feet toward the rear, and that the failure on the part of the defendant or its agent to have such a rear or tail light or to have the same lighted would constitute negligence, and if you find that the defendant did fail to have such rear light or lights, or fail to have the same lighted at said time, and if you further find that such negligence was the proximate cause of the collision and resulting injuries, if any, to the plaintiff, and that the plaintiff was not guilty of contributory negligence, then you are instructed that the plaintiff is entitled to recover in this action."

The trial court, by instruction No. 16, hereinbefore set out, gave that part of the requested instruction down to and including the words "500 feet toward the rear."

In view of the instructions given and what we have said relative to an instruction such as that requested, we are of the opinion that, under the facts in this case, the court did not err in refusing to give the requested instruction.

Appellant particularly relies on the case of *Peterson v. King County*, 199 Wash. 106, 90 P. (2d) 729, and an instruction given therein, to sustain his contention that the court erred in refusing to give the requested instruction. In the cited case, the appellant Peterson ran into a road grader belonging to King county. At the time of the accident, the grader was being moved on the highway at the rate of about seven miles per hour. It had no electric head or tail lights, the only provision for lighting being an ordinary kerosene lantern with a red globe, which the operator of the grader testified he had lighted before leaving Redmond and fastened with a wire to a bracket on top of the left fender. The jury returned a verdict in favor of the plaintiff, and the trial court granted a motion for new trial, for the specific reason that the court was of the opinion it was wrong in instructing

the jury that a road grader was a vehicle, under the laws of the state of Washington.

As we have stated, the main question to be decided was whether or not the trial court erred in instruction No. 8 by informing the jury that a road grader was a vehicle, within the meaning of the statutes regulating the use of motor vehicles upon the public highways. We held that the instruction was correct in that particular, and that it was error for the trial court to grant a new trial upon the ground assigned.

The *Brotherton* case, *supra*, was not referred to in the *Peterson* case, nor was any question of inspection or due care raised in the *Peterson* case. That the *Brotherton* case was not impliedly overruled by the *Peterson* case, is evidenced by the fact that the *Brotherton* case has been cited with approval in *Portland-Seattle Auto Freight v. Jones*, 15 Wn. (2d) 603, 131 P. (2d) 736, and *Trudeau v. Pacific States Box & Basket Co.*, 20 Wn. (2d) 561, 148 P. (2d) 453.

For the reasons assigned, the *Peterson* case is not controlling on the question here being considered.

■ Appellant next argues that his motion for judgment notwithstanding the verdict should have been granted, for the reason that respondent's negligence was established as a matter of law, in that the undisputed facts clearly indicate that, at the time of the collision, the respondent's rear or tail lights were not functioning.

We may say generally that we are unable to understand how the jury could have arrived at any other verdict than it did. In the first place, the jury could have found, under the facts in this case and the instructions, that a reasonable inspection of the truck and trailer was made, and that due care was exercised to see that the trailer lights were burning. In addition, they could reasonably have inferred that the trailer lights were in fact burning until the collision, that the force of the collision disconnected one of the wires in the trailer light cable, causing the lights on the trailer to go out. If they did so find in either case, then respondent would not be guilty of negligence.

We are further of the opinion that there is ample evidence to sustain the verdict on the theory that appellant was guilty of contributory negligence. We do not deem it necessary to again set out the testimony of appellant and the two men riding with him. If appellant had been using any reasonable amount of caution to watch for cars ahead, it is impossible for us, as it apparently was for the jury, to see how he could get to within ten or fifteen feet of the truck and trailer without seeing it, on a clear night, when his headlights threw a beam of light thirty to thirty-five feet ahead.

Instruction No. 9, as given, states:

"An automobile driver must maintain a lookout ahead and must see any object which a reasonably prudent person in the same circumstances would see. Failure to keep such a lookout ahead is negligence, and, if it materially contributed to causing a collision, would bar any recovery by the driver."

It is needless to cite any authority on the necessity of a driver of an automobile keeping a lookout ahead, as the above instruction was not excepted to and became the law of the case.

Instruction No. 10 was not excepted to, and states:

"You are instructed that it was the duty of the driver of an automobile to use due care to avoid colliding with vehicles in front of him, and if you should find from the evidence that the plaintiff did not use due care to avoid such collision, and that such failure materially contributed to the collision complained of, then your verdict should be for the defendant."

Under the facts and the instruction, the jury could have found that appellant was guilty of negligence which materially contributed to the collision, and that he was therefore not entitled to recover in this action.

Appellant's last contention is that the court erred in failing to submit to the jury as a measure of damages the question of future medical expense.

While we are of the opinion that instruction No. 20, as given, was probably broad enough to cover the question of future medical expense, in any event the alleged error be-

comes immaterial, in view of the verdict of the jury in favor of respondent. See *Hansen v. Coldwell,* 192 Wash. 167, 73 P. (2d) 351.

Finding no error in the record, and concluding as we do that the verdict is supported by substantial evidence, the judgment of the trial court is affirmed.

DRIVER, C. J., BEALS, ROBINSON, and BLAKE, JJ., concur.